[Crim. No. 14262. First Dist., Div. One. Sept. 8, 1976.]

THE PEOPLE, Plaintiff and Appellant, v.
MARK TIMOTHY MONTGOMERY, Defendant and Appellant.

COUNSEL

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Richard Tullis, Deputy Attorneys General, for Plaintiff and Appellant.

Smith, Shara & Arnold and James V. Arnold for Defendant and Appellant.

OPINION

BRAY, J.*—Defendant appeals from a judgment after jury verdict of the Santa Clara County Superior Court of guilty of violation of Penal Code section 165. The People appeal from an order of the same court granting defendant a new trial on count two of the indictment.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Issues Presented

*People's appeal.*

1. The court wrongly concluded that it erred in failing to dismiss count two on the ground of entrapment; however, the court did not abuse its discretion in granting a new trial on count two.

*Defendant's appeal.*

2. The court properly denied admittance of the prior relationship between Clement and Commander Thomas.

3. Tape recordings of certain telephone conversations were admissible.

4. The instruction on the elements of Penal Code section 165 was properly given.

5. The disenfranchisement provision of Penal Code section 165 does not violate equal protection.

6. The court did not commit prejudicial error in failing to admit evidence of statements that Commander Thomas made to Clement.

7. The prosecutor did not commit prejudicial misconduct.

## Record

Defendant Mark Timothy Montgomery was indicted by the Santa Clara County Grand Jury on two counts of bribery in violation of Penal Code section 165 (offering to bribe councilman or offering to receive bribe from a councilman).

Defendant moved to suppress evidence and set aside the indictment pursuant to Penal Code section 1538.5 and section 995; both motions were denied. Trial before a jury resulted in a mistrial because the jury could not reach a verdict.

Defendant was tried a second time. This trial resulted in a verdict of guilty on both counts of the indictment. At a hearing on a motion for a

new trial, defendant requested the trial judge to reconsider the denial of a motion previously made to direct the jury to acquit on count two of the indictment, pursuant to Penal Code section 1118.1. As to count two, this motion was denied, but a new trial was granted under Penal Code section 1181, subdivisions 5 and 6. Motions to reconsider the 1118.1 motion and for a new trial were denied as to count one. At this same hearing, defendant was granted two years probation conditioned upon a county jail sentence of six months, which was suspended. Defendant appeals from the judgment of guilty of the first offense. The People appeal from the order granting a new trial of the second offense.

## FACTS

On March 5, 1974, three members of the five-member Milpitas City Council were elected to office. James Clement, Robert Browne, and Lorice Sears joined the defendant and Joseph House, who were not up for reelection at that time. This city council was to elect a mayor from among its members on March 12, 1974. Defendant, who was running for the Republican nomination for Congress, felt that his chances for success would be improved if he ran as mayor rather than as city councilman. On March 6, 1974, defendant telephoned Councilman Clement and requested his vote for mayor. During this conversation defendant apparently indicated that, if Clement voted for him, he would be receptive to projects proposed by Clement and his supporters, and if Clement did not vote for defendant, he would not be receptive to those projects. Both men agreed to continue their discussion the next day at a dinner meeting for area councilmen. Clement expressed to his wife, his neighbor and his business partner his concern over the tenor of this conversation, and his fear that defendant would either bribe or threaten him. He thereafter contacted Chief Murray of the Milpitas Police Department. From the record there appears to have been some professional antagonism between the defendant and Chief Murray, e.g., over such things as the purchase of police equipment, administrative structure of the police department, and related budgetary problems. The matter was referred to Murray's subordinate, Commander Neil Thomas. After conferring with a member of the district attorney's office, Thomas suggested that the meeting between the defendant and Clement be held at the latter's office rather than in the restaurant where the dinner meeting was held.

On March 7, 1974, after the dinner meeting and at Clement's invitation he and the defendant returned to his office to continue the

discussion from the previous day. Clément was equipped with a Fargo transmitter, and the conversation was recorded by the police. The defendant again indicated that his response to proposals supported by Clement would be favorable if Clement voted for him, and would be unfavorable if he did not. The tape of this discussion was of such poor quality that it was not admissible. Commander Thomas did not feel that a crime had been committed at this point. He did, however, instruct Clement not to talk with the defendant again unless the police could record the conversation.

On March 9, 1974, the defendant àgain telephoned Clement. According to Clement's testimony, the defendant stated that he wanted to pursue their previous conversations. Clement stalled the defendant, telling him he was expecting a long distance phone call. He contacted Commander Thomas, informed him of the call from defendant, and met Thomas at the police department. Clement then returned defendant's call, and the ensuing conversation was recorded through an induction coil attached to the receiver. During the course of their discussion, the defendant declared that he "would have to run a little harder line on this thing"; that if he did not become mayor he would be "antagonistic" toward the reappointment of Sandy Carstedder to the Milpitas Planning Commission (which Clement supported); and that he "would take more convincing than ever before" that projects favored by Clement's supporters were in the best interest of Milpitas, particularly those projects brought up by Richard Taylor (a real estate developer and Clement's campaign advisor). This conversation of March 9, 1974, was the basis of count one of the indictment.

On March 10, 1974, Chief Murray, Commander Thomas, and the deputy district attorney met and listened to the tape of the March 9 conversation. In an effort to obtain clarification of the defendant's intentions, it was decided he would be contacted again. Commander Thomas then met with Clement and Richard Taylor in the Hyatt House bar in San Jose. Thomas instructed Clement to offer his vote to the defendant if, in addition to the other matters previously discussed, the defendant would support a bogus proposal for a restaurant and bar with live entertainment to be brought before the council by Taylor. Thomas stated, "Let's offer him and see what he'll go for." Clement then telephoned the defendant and, in addition to obtaining defendant's approval for the fabricated restaurant and bar proposal, offered defendant a campaign contribution from Taylor, this also at the suggestion of

Commander Thomas. This March 10th conversation was recorded by Thomas, and was the basis for count two of the indictment.

The next day, March 11, 1974, Clement again contacted defendant in order to inform him that he actually intended to vote for Councilman House rather than the defendant. This conversation too was recorded. Shortly afterwards, at approximately midnight Thomas went to defendant's home along with Sergeant Flores for the purpose of taking and recording a statement. Sergeant Flores was present in order to serve as a witness when Thomas read the *Miranda* warnings to defendant. After those warnings were given, Flores left and went to Clement's home with a tape recorder. The defendant called Clement after Thomas had completed his interview, and again later that morning (March 12). The thrust of these conversations, both of which were recorded, was to indicate to Clement that the police were suspicious and to confirm that there were no deals. At the mayoral election on the night of March 12, 1974, House was unanimously elected mayor and Clement was unanimously elected vice-mayor.

*People's Appeal.*

1. The court wrongly concluded that it erred in failing to dismiss count two on the ground of entrapment; however, the court did not abuse its discretion in granting a new trial on count two.

At the close of the prosecution's case against defendant, counsel moved that the court find entrapment as a matter of law and dismiss the proceedings. The motion was under Penal Code section 1118.1, and was denied by the trial judge. Subsequently, after the jury had rendered a verdict of guilty on both counts of the indictment, defense counsel renewed this motion under section 1118.1, in addition to requesting a new trial under Penal Code section 1181. After hearing argument on these issues, the trial judge found that "With reference to count two, the court is of the opinion that he committed error in not granting the defendant's motion for or pursuant to section 1118.1 of the Penal Code to acquit the defendant on the grounds of entrapment as a matter of law. [¶] I am talking about count two, not count one. [¶] I think that Clement and Thomas planned and instigated the crime by means of admitted lies presented to Mr. Montgomery to foster a possible crime. The close relationship between the two men became more and more apparent as the trial proceeded. [¶] I feel that one reason I denied the motion is or as

to count one was because the allegations of the first part of count two were repeats of count one, and some of the testimony was repetitious. [¶] Stripping the second count down to its actual worth we have a count based upon admitted lies and done for the purpose of entrapping the defendant. That is the way I feel about count two." Indicating, however, that he did not feel he had the authority to enter a judgment of acquittal after the jury verdict, despite the fact that he felt that was what the circumstances warranted, the trial judge granted a new trial on count two, pursuant to Penal Code section 1181, subdivisions 5 and 6.

■ The threshold question, presented by the People's appeal, is whether there was entrapment as a matter of law with respect to count two. In *People* v. *Meacham* (1967) 256 Cal.App.2d 735 [64 Cal.Rptr. 362], the Court of Appeal stated at page 744, "Entrapment may be shown as a matter of law in certain cases [citation], and when it is thus disclosed, 'the court has a duty to root its effects out of the trial upon its own initiative if necessary.' [Citation.]" Although entrapment was not found in that case, involving five counts of bribery of a city councilman (Pen. Code, § 165), the principle remains the same.[1]

The court properly denied the motion for dismissal of count two as there was no entrapment. The court, in later stating that it should have dismissed count two because of entrapment, reflects a fundamental misconception of the court's rule in adjudicating the issue. It overlooked the requirement that the criminal intent to commit the offense did not originate with the defendant. Entrapment as a matter of law requires that the defendant produce evidence that the criminal intent to commit the offense originated with the government. (*In re Foss* (1974) 10 Cal.3d 910, 931-932 [112 Cal.Rptr. 649, 519 P.2d 1073]; *People* v. *Moran* (1970) 1 Cal.3d 755, 760, 761 [83 Cal.Rptr. 411, 463 P.2d 763].) The evidence clearly shows that defendant was willing to engage in bribery activity and that he harbored a continuing intent throughout the period from March 6 to March 11. It is true that the government had made up a story of the S-curve project and offer of a campaign contribution, but that fact in no way caused defendant to make up his mind to the bribery. He had the intent all along.

There is nothing in the record to indicate that defendant's intent changed between March 9 and March 10. To the contrary, defendant

---

[1]Defendant in *Meacham* was found guilty on all five counts, and for reasons not clear in the opinion, a new trial was granted on four counts, which were then dismissed. Only the conviction which stood on the remaining count was appealed.

quickly agreed to support the S-curve project and receive the campaign contribution when these were presented to him and then ended the conversation by reaffirming his offer of March 9 to vote for Sandy Carstedder's reappointment to the planning commission and for Clement's election to the position of vice-mayor in return for Clement's vote for mayor. Defendant did not change his mind about his bribery activities until he was visited by Commander Thomas on March 11. Then he said to Clement, "We've got to protect each other a little bit here, buddy," and "All bets are off."

In *Hampton v. United States* (1976) 425 U.S. 484 [48 L.Ed.2d 113, 96 S.Ct. 1646] the defendant claimed entrapment on the ground that narcotics sold by him were supplied by a government informer. He argued that even if he were predisposed to commit the offense, the jury should have been instructed to acquit him as a matter of policy if the government supplied the narcotics. The plurality opinion written by Justice Rehnquist totally rejected this argument and stated that in *United States v. Russell* (1973) 411 U.S. 423 [36 L.Ed.2d 366, 93 S.Ct. 1637], it "ruled out the possibility that the defense of entrapment could ever be based upon governmental misconduct" where the predisposition of the defendant to commit the crime was established. (*Hampton v. United States, supra,* at pp. 488-489 [48 L.Ed.2d at p. 118].) The concurring opinion written by Justice Powell declined to rule out the entrapment defense *where due process was violated* but said, "cases, if any, in which proof of predisposition is not dispositive will be rare." (*Id.,* at p. 495 and fn. 7 [48 L.Ed.2d at p. 122].) A minority of three judges expressed the view that the entrapment defense could apply even when the defendant's preexisting intent was shown. (*Id.,* at pp. 495-500 [48 L.Ed.2d at pp. 122-125].)

*Hampton* supports the position that there was no unlawful entrapment as to either of the counts in this case. The March 9 transaction in count one followed persistent efforts by defendant to offer and receive bribes on March 6 and 7 and his demonstrated unwillingness to give up these efforts when Clement told defendant that he had made a definite decision to vote for Councilman House for mayor. Defendant's agreement on March 10 to support the bogus S-curve project and accept a campaign contribution from Richard Taylor came one day *after* the March 9 bribery transactions of which he was convicted in count one.

Entrapment as a matter of law is not established unless the defendant produces evidence that the criminal intent to commit the offense

originated with the government. (*In re Foss, supra,* 10 Cal.3d 910 at pp. 931-932; *People* v. *Moran, supra,* 1 Cal.3d 755 at pp. 760-761.) Here defendant failed in any way to demonstrate that his intent was any less corrupt on March 10 than it was the previous day. Rather, the evidence makes it clear that defendant was ready and willing to engage in bribery activity and that he harbored a continuing intent throughout the period from March 6 to March 11. The jury was properly instructed on the law of entrapment and the evidence at trial more than supports its implied finding that the S-curve project and offer of a campaign contribution did no more than present defendant with an opportunity which he immediately seized.

In *Hampton* the court said: "To sustain petitioner's contention here would run directly contrary to our statement in *Russell* that the defense of entrapment is not intended 'to give the federal judiciary a "chancellor's foot" veto over law enforcement practices of which it did not approve. The execution of the federal laws under our Constitution is confided primarily to the executive branch of the government, subject to applicable constitutional and statutory limitations and to judicially fashioned rules to enforce those limitations.'" (*Hampton* v. *United States, supra,* 425 U.S. 484 at p. 490 [48 L.Ed.2d at pp. 118-119].) It is one thing to invalidate a conviction because the government has implanted in the mind of an innocent person the intent to commit a crime or because the police have engaged in conduct so "'shocking to the universal sense of justice'" that it violates due process. (*United States* v. *Russell, supra,* 411 U.S. 423 at p. 432 [36 L.Ed.2d 366 at p. 373].) But in our view, it is quite another thing for the judiciary to exercise a "chancellor's foot veto" over activity whenever the court feels that it does not measure up to the notions of fair play acceptable "on the playing fields of Eton." (*People* v. *Boulad* (1965) 235 Cal.App.2d 118, 126 [45 Cal.Rptr. 104]; see *People* v. *Atchley* (1959) 53 Cal.2d 160 [346 P.2d 764].)

■ We conclude, however, that the trial court did not abuse its discretion in granting a new trial.

An order granting a new trial will be affirmed on appeal without regard to the particular reason given if there is good and sufficient reason present which is within the terms of the motion. (*People* v. *Castro* (1901) 133 Cal. 11, 12 [65 P. 13]; *People* v. *Flood* (1894) 102 Cal. 330, 331 [36 P. 663]; *People* v. *Perkin* (1948) 87 Cal.App.2d 365, 367 [197 P.2d 39].) ■ The trial judge has broad discretion in passing upon such a

motion and his action will not be disturbed on appeal unless the record clearly shows an abuse of discretion. (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14]; *People* v. *Sarazzawski* (1945) 27 Cal.2d 7, 16 [161 P.2d 934]; *People* v. *Ferlin* (1928) 203 Cal. 587, 596 [265 P. 230]; *People* v. *Roubus* (1966) 65 Cal.2d 218, 220-221 [53 Cal.Rptr. 281, 417 P.2d 865].)

 The court granted the new trial under Penal Code section 1181, subdivisions 5 and 6.

Section 1181, subdivision 5, provides that the court may grant a new trial "When the court has misdirected the jury in a matter of law, or has erred in the decision of any question of law arising during the course of the trial, and when the district attorney or other counsel prosecuting the case has been guilty of prejudicial misconduct during the trial thereof before a jury."

It is clear that the court erred in granting the motion under this subdivision. The court's claim of misdirecting the jury was based on its erroneous belief that it should have instructed the jury that the evidence showed entrapment as a matter of law. Nor does the evidence in the case show any misconduct by the district attorney which would justify a new trial.

However, a different situation applies to the application of subdivision 6 of section 1181. That subdivision provides in pertinent part that the court may grant a new trial "When the verdict or finding is contrary to law or evidence, . . ." The court evidently felt that the testimony given by the witness Clement was not worthy of credence for it said, "Now, I wouldn't feel satisfied in confining a man on the testimony of Clement, a weak character, who, among other unacceptable actions, admitted that he lied to Montgomery at the instigation of Thomas to entrap him; and also the testimony of Thomas, which was given to set it up, and went to the length that he did to convict a friend for the benefit of another."

"It is not material, upon this appeal, as to the particular ground upon which the court based its order granting the new trial; for if the order should have been made upon any one of the grounds raised by defendant, it will be affirmed." (*People* v. *Castro, supra,* 133 Cal. 11 at p. 12.) In this case the second ground on which the court acted is one of the grounds raised by defendant.

"It has been stated that a defendant is entitled to two decisions on the evidence, one by the jury and the other by the court on motion for a new trial. . . . [¶] In passing upon a motion for a new trial the judge has very broad discretion and is not bound by conflicts in the evidence, and reviewing courts are reluctant to interfere with a decision granting or denying such a motion unless there is a clear showing of an abuse of discretion." (*People* v. *Robarge, supra,* 41 Cal.2d 628 at p. 633.)

*Defendant's appeal.*

2. ■ The court properly denied admittance of the prior relationship between Clement and Commander Thomas.

This evidence was properly excluded.

The evidence of this "prior relationship" between Clement and Thomas offered by defendant concerned Clement's extramarital affair with a Milpitas Planning Commissioner. The woman's husband had extorted and later shot Clement. After partially satisfying the husband's extortion demands, Clement apprised Commander Thomas of his predicament. This entire matter was excluded from evidence by the trial judge as "absolutely irrelevant."

The terms of Evidence Code section 352 state, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will . . . create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." The determination of the trial court under this section will not be disturbed absent a clear showing of abuse of discretion. (See *People* v. *Delgado* (1973) 32 Cal.App.3d 242, 251 [108 Cal.Rptr. 399], disapproved on other grounds in *People* v. *Rist* (1976) 16 Cal.3d 211, 221-222 [127 Cal.Rptr. 457, 545 P.2d 833].) In *People* v. *Peters* (1972) 23 Cal.App.3d 522, 533 [101 Cal.Rptr. 403], the Court of Appeal (per Molinari, P. J.) excluded evidence of a witness' alleged homosexuality. In so doing, the court stated: "In any event, we apprehend that the proffered evidence was of such a nature that its probative value was substantially outweighed by the probability that its admission would create a substantial danger of undue prejudice and of confusing the issues so as to warrant its exclusion in the discretion of the court. (Evid. Code, § 352.)" Contrary to the assertions of defendant, the fact that Thomas was informed of Clement's extramarital relationship does not

of necessity indicate that they had a "working relationship." The trial judge therefore did not abuse his discretion in excluding the evidence of these matters. (See also Evid. Code, § 780.)

3.. Tape recordings of certain telephone conversations were admissible.

Defendant claims that the communications between himself and Clement were improperly intercepted by the police under the terms of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. §§ 2510-2520), because the police lacked probable cause. As the Court of Appeal pointed out in People .v. Standifer (1974) 38 Cal.App.3d 733, 746 [113 Cal.Rptr. 653], title 18 United States Code section 2511, subdivision 2, subsections (c) and (d) "provide exceptions to the application of the wiretap provisions of title III of the Omnibus Crime Control and Safe Streets Act. (18 U.S.C. §§ 2510-2520). The exceptions provide that if consent is given by one of the parties to the communication the chapter does not apply." Regardless of these exceptions, and despite defendant's contentions to the contrary, the discussions between defendant and Clement of March 6 and 7, while perhaps not sufficient for indictment or arrest, did not therefore destroy probable cause to record the conversation of March 9. Quite the opposite, probable cause appears to have been sustained. The conversations, set against the backdrop of the city council and mayoral elections, and connected as they were by the intention of the parties to continue consideration of the subject matter, satisfy the requirements of probable cause.

Section 633 of the Penal Code, rather than the Omnibus Crime Control and Safe Streets Act, is controlling here. That section permits police to overhear and record "any communication which they could lawfully overhear or record prior to the effective date of this chapter." Additionally, evidence obtained by such overhearing or recording is not inadmissible. The principal case, under prior law, is People v. Malotte (1956) 46 Cal.2d 59 [292 P.2d 517], where the court stated at page 63: "When a person discusses the commission of a crime with another, face to face or at a distance through the use of any means of communication, there is no unreasonable invasion of privacy when the other uses the conversation against him." The court continued, holding at page 64: "There was likewise no invasion of privacy in violation of section 640 of the Penal Code. There is no learning of the contents of a communication 'fraudulently, clandestinely, or in any other unauthorized manner' when

one of the participants to the conversation consents to or directs its overhearing or preservation."[2]

More recently in *People* v. *Caravella* (1970) 5 Cal.App.3d 931 [85 Cal.Rptr. 576], involving a conviction for pimping and pandering, the court found that, "The recordings of the telephone conversations were properly received in evidence since they were made with equipment installed in the model's home with her consent. [Citation.] The long-established California rule in this regard was not altered by the Legislature's enactment of Penal Code chapter 1.5 in 1967." (*Id.,* at pp. 933-934; Pen. Code, § 630 et seq.) In *People* v. *Murphy* (1972) 8 Cal.3d 349 [105 Cal.Rptr. 138, 503 P.2d 594] (cert. den. 414 U.S. 833 [38 L.Ed.2d 68, 94 S.Ct. 173]), the court held at page 361, "Since Jerry Carnes requested that his telephone conversation with defendant be recorded and since Richard Carnes consented to wear a transmitter during his conversation with his brother and defendant . . ., the trial court properly received both recordings." Thus, since Clement consented to the recordings, there seems to be no question as to their admissibility. Additionally, Penal Code section 633.5 would have permitted Clement to record the conversations himself if he reasonably believed the defendant would attempt to bribe him.

4. ■ The instruction on the elements of Penal Code section 165 was properly given.

Defendant's contention that the jury was not instructed as to the necessity of showing an "apparent meeting of the minds" is without merit. The relevant instructions given were exact copies of CALJIC Nos. 7.08 and 7.09. In *People* v. *Fitzpatrick* (1926) 78 Cal.App. 37, 45 [247 P. 601], the court stated: "The agreement referred to in it and in section 165 of the Penal Code, under which appellants were charged, is not the kind of agreement contemplated by the civil law of contracts, under which there must be an actual meeting of the minds of contracting parties in order to form an agreement. So to hold would be to allow the escape from punishment of grossly corrupt public officials in those cases in which others might feign to be their accomplices and in which no evidence against the defendants exists except that to come from those feigned accomplices. The terms of the statute are met if it is proven to the satisfaction of a jury that the defendants have 'agreed' or intended in

[2]Penal Code section 640 was repealed; see Penal Code section 631. See also *United States* v. *White* (1971) 401 U.S. 745 [28 L.Ed.2d 453, 91 S.Ct. 1122].

their own minds to receive a bribe." Thus it seems that the instructions given by the trial judge were entirely proper.

5. ■ The disenfranchisement provision of Penal Code section 165 does not violate equal protection.

Defendant asserts that the disenfranchisement penalty in section 165 of the Penal Code violates the equal protection clause of the Fourteenth Amendment citing *Ramirez* v. *Brown* (1973) 9 Cal.3d 199 [107 Cal.Rptr. 137, 507 P.2d 1345]. This case was reversed by the United States Supreme Court in *Richardson* v. *Ramirez* (1974) 418 U.S. 24 [41 L.Ed.2d 551, 94 S.Ct. 2655], which held that the California Supreme Court erred in concluding voting disqualification for ex-felons violated the federal constitutional right to equal protection.

Moreover, defendant's complaint about Penal Code section 165 is premature because he is presently serving a sentence of two years probation granted on condition he serve six months in the county jail. Until he completes his current sentence, he is disqualified from voting under the California Constitution as well as Penal Code section 165. (Cal. Const., art. II, § 3, discussed with approval in *Ramirez* v. *Brown* (1974) 12 Cal.3d 912, 914 [117 Cal.Rptr. 562, 528 P.2d 378].)

6. ■ The court did not commit prejudicial error in failing to admit evidence of statements that Commander Thomas made to Clement.

During cross-examination Clement was asked what statements Thomas had made to him concerning the first telephone call from defendant. The hearsay objection of the prosecution was sustained. Defendant asserts on appeal that this was error, since the responses to his questions were solicited not for the truth of the matters contained therein but rather to show the state of mind of the police and were thus admissible under Evidence Code section 1250.

Since the defense of entrapment raises the origin of intent, it was error for the court to sustain the objection under these circumstances. The error, however, was not prejudicial to defendant. Commander Thomas testified and was cross-examined extensively about the relevant subject matter. *People* v. *Contreras* (1962) 201 Cal.App.2d 854, 856-857 [20 Cal.Rptr. 551], presented a substantially similar situation. The court found that "Where the commission of an offense is solicited by an officer

of the law, a primary issue presented is whether the accused had a preexisting intent to commit the same, or whether the criminal design was conceived in the mind of the officer and, through him, the accused, who had no intent to commit an offense, was lured into its commission. [Citations.] Of necessity the statements of the officer at the time are material to a determination of this issue; the contents thereof are admissible to prove what was said rather than the truth of what was said; and, for this reason, evidence in proof of the fact that they were made is direct and not hearsay. [Citations.] The exclusion of such evidence under the circumstances of this case was error. [¶] However, the error was not prejudicial. On cross-examination of the defendant, the district attorney, who had objected to questions which sought to elicit the statements made by Tucker to the defendant, covered the field, and by his interrogation caused the admission of those statements into evidence."

7. ■ The prosecutor did not commit prejudicial misconduct.

Defendant asserts that the prosecutor was guilty of misconduct on several occasions. In particular, he asserts that the prosecutor improperly questioned Commander Thomas as to whether he considered the methods used in obtaining the tapes to be legal, thus improperly soliciting a legal conclusion. He also complains that at one point the prosecutor accused the defense attorney of having told a "blatant lie." This comment, it is noted, drew an immediate admonition from the court. In light of the entire record, it appears that the conduct of the prosecutor did not contribute to the verdict and that reversal of the judgment is not justified on this ground. (*People* v. *Reyes* (1974) 12 Cal.3d 486, 506 [116 Cal.Rptr. 217, 526 P.2d 225].)

The judgment of conviction of violation of Penal Code section 165 as charged in count one is affirmed. The order granting a new trial on count two is affirmed.

Molinari, P. J., and Sims, J., concurred.

Petitions for a rehearing were denied October 5, 1976, and the petitions of both parties for a hearing by the Supreme Court were denied November 24, 1976. Mosk, J., was of the opinion that the petitions should be granted.