[No. B057698. Second Dist., Div. Four. Dec. 19, 1991.]

THE PEOPLE, Plaintiff and Appellant, v.
KEITH RICHMOND, Defendant and Respondent.

612

## COUNSEL

Ira Reiner, District Attorney, Maurice H. Oppenheim and Wendy C. Forward, Deputy District Attorneys, for Plaintiff and Appellant.

Omar Bakari, under appointment by the Court of Appeal, for Defendant and Respondent.

## OPINION

**WOODS (A. M.), P. J.**—This is an appeal by the People from an order granting defendant Keith Richmond's motion for a new trial on the grounds of instructional error (Pen. Code, § 1238, subd. (a)(3)). The People contend that the trial court erroneously concluded that it should have instructed the jury on assault with a deadly weapon as a lesser included offense of attempted murder with the use of a deadly weapon and that the granting of a new trial was, therefore, an abuse of discretion. Defendant concedes that assault with a deadly weapon is not a lesser included offense of attempted murder but argues that the order granting him a new trial should nevertheless be upheld because the court should have instructed the jury on assault with

a deadly weapon as a lesser related offense of attempted murder. We reverse the order for new trial.

In an information, defendant was charged with attempted willful, deliberate and premeditated murder (Pen. Code, §§ 664 & 187). It was further alleged that defendant personally used a deadly weapon, namely a hatchet, during the attempt (Pen. Code, § 12022, subd. (b)) and that he intentionally inflicted great bodily injury on the victim (Pen. Code, § 12022.7). The matter was tried before a jury.

The evidence at trial established that Derrell Dixon, a developmentally disabled man, lived with his mother in an apartment building on West Vernon. Defendant lived next door. About 11 p.m. on June 16, 1990, Dixon was at home when Deidra Newton came to his apartment and asked him to accompany her to buy cigarettes. Dixon agreed. Newton had come from the home of the Bells, a family in the neighborhood, where she left defendant, her nephew. Dixon had visited the Bells earlier that day. As Newton and Dixon were walking to the gas station, Newton saw a friend. Newton gave Dixon money to buy cigarettes and a lighter and told him to meet her around the corner.

Dixon continued toward the gas station alone, until he saw defendant, whom he knew by both the names Keith Richmond and Keith Jenkins. Defendant was leaning against his red moped and asked Dixon " '[c]ome on, let's go for a ride.' " Dixon agreed and got on the moped.

After riding around for a long time, defendant stopped at a gas station and filled up his moped. He also filled a separate container with gasoline and had Dixon carry it as they continued to ride around. Thereafter, defendant parked his moped around the corner from Centinela Park in Inglewood. He led Dixon into the park and had him carry the container of gasoline. Defendant told Dixon that he was waiting for someone who was going to tell him who broke into his apartment. Defendant walked away. When he returned, he suddenly hit Dixon on the back of the head with the metal end of a screwdriver. Dixon started to run. Defendant followed and repeatedly struck Dixon on the forehead and body with the screwdriver and forced him back to their former location. Defendant ordered Dixon to lie down and threatened to chop off his arms and legs if he moved.

Defendant put down the screwdriver and poured the gasoline on Dixon. Defendant then demanded that Dixon tell him who broke into his house. When Dixon said he did not know, defendant pulled out a hatchet from under his shirt and said, " 'I want to chop your neck off then burn you.' "

Defendant threatened to kill Dixon two or three times and told him that he was going to chop off his legs if he continued to move around.

Dixon was terrified but tried to get up and shield himself with his right arm because the gas was burning him. When he did, defendant struck him with the hatchet in the right arm. Dixon ran away and defendant followed behind repeatedly hitting him in the back, and also once in the head, with the hatchet. Dixon managed to escape and make his way to Daniel Freeman Memorial Hospital.

Dr. Syndi Keats, the emergency physician who treated Dixon sometime after midnight, stated that he was bleeding badly and was covered with gasoline. His blood pressure was very low indicating shock, and his left lung had been punctured and was collapsed. Keats stated that the puncture was consistent with a screwdriver wound. The doctor further observed wounds consistent with a hatchet attack, namely a foot-long laceration, as well as a six-inch laceration to the bone, on Dixon's back, another laceration to the bone on his right arm, and a cut behind his left ear. Defendant received three units of blood which Keats stated was "quite a bit" of blood. Keats further described Dixon's condition as serious and stated that he would not have survived if he had not reached the hospital.

About 2:55 a.m. on June 17, 1990, Inglewood Police Officer Cary Tomlinson went to the emergency room at Daniel Freeman in response to a radio call about a stabbing victim. Tomlinson contacted Dixon but was only able to conduct a limited interview due to Dixon's condition. Dixon, who appeared to have difficulty speaking, told the officer that he had been attacked in the park and identified his attacker as "Keith," repeating the name about 15 times. Dixon also stated that he lived on West 82nd Street and that Keith was his upstairs neighbor who lived in apartment number 8. Dixon related that he accompanied Keith to the park where they supposedly were going to meet someone who knew the identity of the person who had burglarized Keith's apartment. Dixon eventually stated that Keith's last name was Jenkins.

On June 19, 1990, Detective Michael Beck arrested defendant at his residence, apartment number 8 located upstairs in a complex on West Vernon. The detective also showed Dixon a photographic lineup from which he identified defendant as his assailant.

Henry Corbett, the handyman at the apartment complex where Dixon and defendant lived, installed a new window in appellant's apartment on the afternoon of June 16, 1990. At that time, Corbett learned from defendant that someone had broken into his apartment.

In defense, Roxanne Bell testified that on the day in question, defendant arrived at her home at 9:30 or 10 a.m. and stayed until 5 a.m. the following day. Roxanne Bell further testified that somewhere between 12 and 1 a.m., defendant left for a short time with Cassandra Starks to get some chicken. Defendant did not take his moped which he had brought to the Bell residence. Instead, he rode in the car with Starks. Cynthia Bell testified that Starks and defendant did not leave until 3:30 or 4 a.m. Starks stated their departure time was 4:15 a.m.

Luchel Newton, Deidra Newton's husband, testified that he was helping defendant fix his moped at the Bells' house and that defendant test drove the moped several times. Each time, he was gone for about five minutes.

Defendant and numerous defense witnesses testified that Dixon had a reputation for being a liar.

Defendant presented an alibi defense. He denied any culpability and stated that Dixon's testimony regarding the attack was untrue and that he is not Keith Jenkins. Defendant testified that he was repairing his moped at the Bell residence from 9:30 a.m. on June 16, 1990, until 5 a.m. the following morning and that during this period he did not return to his apartment. Defendant stated that he did leave to get some chicken and returned to the Bell home at 4:15 or 4:30 a.m.

Defendant suggested that Dixon fabricated the attack because of something that had happened the year before. At the end of 1989, Dixon's mother asked defendant to watch Dixon while she was in the hospital. Defendant stated that during this time, Dixon was taking things out of the house and selling them, had prostitutes in the house, and was involved in drug activity with prostitutes. According to defendant, this information led Dixon's mother and sister to place him in a board and care facility and possibly made Dixon angry enough to lie.

Defendant further stated that his apartment had not been burglarized and denied telling Corbett that it had been burglarized. Defendant stated that the window in his apartment had been cracked as the result of an earthquake and that he simply had Corbett replace the glass.

Defense counsel requested that the jury be instructed on assault with a deadly weapon as a lesser included offense, arguing that if the jury found defendant to be Dixon's attacker, it could nevertheless conclude that defendant did not have the intent to kill Dixon. In light of defendant's complete denial of liability, as well as evidence that he told Dixon that he would kill

him, the court refused to deliver the requested instruction to the jury. The jury convicted appellant of attempted murder and further found all allegations to be true.

Subsequently, the trial court granted defendant's motion for a new trial. It concluded that assault with a deadly weapon was a lesser included offense of attempted murder coupled with an allegation of deadly weapon use and that it erred, as a matter of law, in refusing defendant's request that the jury be instructed on assault with a deadly weapon as a lesser included offense of attempted murder. This appeal by the People followed.

■   The People contend, and defendant concedes, that assault with a deadly weapon is not a lesser included offense of attempted murder with the use of a deadly weapon, because attempted murder can be committed without using a deadly weapon. (*People* v. *Gragg* (1989) 216 Cal.App.3d 32, 41 [264 Cal.Rptr. 765]; *In re David S.* (1983) 148 Cal.App.3d 156, 159 [195 Cal.Rptr. 754].) Moreover, the allegation of deadly weapon use under Penal Code section 12022, subdivision (b) is not to be considered as part of the accusatory pleading in determining whether assault with a deadly weapon is a lesser included offense of attempted murder. (*People* v. *Wolcott* (1983) 34 Cal.3d 92, 100-101 [192 Cal.Rptr. 748, 665 P.2d 520]; *People* v. *Delahoussaye* (1989) 213 Cal.App.3d 1, 10 [261 Cal.Rptr. 287]; *In re David S., supra,* at pp. 158-159.) The trial court's consideration of the deadly weapon use enhancement was, therefore, improper and led to the court's erroneous conclusion.

Defendant invokes application of the principle that a correct ruling will not be reversed even though the court's reasoning was erroneous. (See *People* v. *Gilchrist* (1982) 133 Cal.App.3d 38, 44 [183 Cal.Rptr. 709]; *People* v. *Ramos* (1972) 25 Cal.App.3d 529, 540 [101 Cal.Rptr. 230].) ■   "An order granting a new trial will be affirmed on appeal without regard to the particular reason given if there is good and sufficient reason present which is within the terms of the motion." (*People* v. *Montgomery* (1976) 61 Cal.App.3d 718, 728 [132 Cal.Rptr. 558].) ■   Defendant contends that the order granting a new trial must be upheld because the court should have instructed the jury on assault with a deadly weapon as a lesser related offense of attempted murder. We disagree.

■   The trial court does not have a duty to instruct on lesser related offenses in the absence of a request by the defendant that such instructions be delivered to the jury. (*People* v. *Carrera* (1989) 49 Cal.3d 291, 310 [261 Cal.Rptr. 348, 777 P.2d 121], cert. den. *Carrera* v. *California* (1990) 495 U.S. 911 [109 L.Ed.2d 301, 110 S.Ct. 1938]; *People* v. *Geiger* (1984) 35

Cal.3d 510, 530 [199 Cal.Rptr. 45, 674 P.2d 1303, 50 A.L.R.4th 1055]; *People* v. *Moore* (1990) 224 Cal.App.3d 234, 239, fn. 6 [273 Cal.Rptr. 680].)
██ During trial, defendant mistakenly believed that assault with a deadly weapon was included in attempted murder and therefore did not request lesser related instructions. The parties did not brief the issue of whether a lesser-related offense instruction, as such, was requested by appellant. As we have pointed out, however, defendant did specifically ask that the jury be instructed on assault with a deadly weapon. Even though he mistakenly presented this as a lesser included offense rather than a lesser related offense, we will assume that his request was properly presented before the trial court for purposes of *Geiger*. (See 35 Cal.3d at p. 526.)

Even assuming that defendant properly had presented a request for instruction on assault with a deadly weapon as a lesser offense, we conclude that the court abused its discretion in granting defendant's motion for a new trial. In *People* v. *Geiger*, *supra*, 35 Cal.3d 510, this state's high court held that due process requires the delivery of instructions on lesser related offenses when requested by a criminal defendant and when certain prerequisites are met. The court stated: "[W]e find no reason in law, justice, or common sense why a jury that is not persuaded of the defendant's guilt of the charged offense should not have the opportunity to find him guilty of a lesser related offense where, as here, the lesser offense is closely related to that charged, there is evidence of its commission, and defendant's theory of defense is consistent with such a finding." (35 Cal.3d at p. 514.)

██ The court listed the necessary prerequisites for delivery of an instruction on lesser related offenses: "[T]he first prerequisite to receiving instructions on lesser related offenses must be the existence of some basis, other than an unexplainable rejection of prosecution evidence, on which the jury could find the offense to be less than that charged. [¶] Second, the offense must be one closely related to that charged and shown by the evidence. . . . [¶] Finally, the instructions must be justified by the defendant's reliance on a theory of defense that would be consistent with a conviction for the related offense. Thus, the instruction need not be given if the defense theory and evidence reflect a complete denial of culpability as when the defense is alibi, or the only issue is identity, unless the defendant argues that the evidence at most shows guilt only of the related offense." (*Id.* at pp. 531-532; fn. omitted.)

██ Defendant argues, in reliance on *People* v. *Woods* (1991) 226 Cal.App.3d 1037 [277 Cal.Rptr. 269], that, despite his alibi defense and total denial of culpability, the court should have instructed the jury on assault with a deadly weapon as a lesser related offense. Defendant's reliance is misplaced; *Woods* is factually distinguishable from the present case.

In *Woods*, appellant was identified as the passenger in a white Cadillac who fired two shots in the direction of two men. Thereafter, someone from the same vehicle shot and killed another man who was sitting in his car waiting to make a left turn. Woods was convicted of two counts of attempted murder and one count of second degree murder resulting from gang-related drive-by shootings. The allegation of firearm use in the murder count was found to be untrue. Although Woods's theory of defense was alibi, he requested the trial court to instruct the jury on assault with a deadly weapon as a lesser related offense of attempted murder based on the existence of substantial evidence that the crime committed was no greater than assault with a deadly weapon. In addition, during his summation to the jury, defense counsel argued that the prosecution was required to prove that Woods had the specific intent to kill, that the prosecution failed to do so, and that it could not convict Woods of attempted murder. Although acknowledging that an alibi defense "is inconsistent with a defense theory appellant should instead be convicted of a lesser related offense" (226 Cal.App.3d at p. 1050), the court concluded that the record's substantial evidence of assault with a deadly weapon combined with Woods's argument that the record was devoid of evidence of specific intent to kill, required delivery of the lesser related offense instructions. We find this logic difficult to follow.

In any event, the present case is patently distinguishable from *Woods* in that the first and third *Geiger* prerequisites have not been satisfied. The record is devoid of any basis, other than the unexplainable rejection of prosecution evidence, from which a reasonable juror could find that defendant did not have the specific intent to kill. Rather, the record contains uncontradicted evidence that defendant threatened to kill Dixon, that defendant repeatedly struck and seriously wounded Dixon with a hatchet while he attempted to flee, and that Dixon would have died had he not made it to the hospital. Moreover, at no time during his summation to the jury did defense counsel argue the absence or insufficiency of evidence of specific intent to kill. Consistent with defendant's complete denial of culpability and his alibi defense, his counsel attacked Dixon's credibility and argued that he was a liar who falsely accused defendant of being his assailant.

We conclude that an instruction on assault with a deadly weapon as a lesser related offense was not justified in this case and that the court abused its discretion in granting a new trial on the grounds of instructional error. (See generally *People* v. *Montgomery, supra,* 61 Cal.App.3d at pp. 728-729.)

The order granting defendant's motion for a new trial is reversed, and the judgment of conviction is affirmed. The case is remanded to the superior court to sentence respondent on his convictions.

Epstein, J., and Cooper, J.,* concurred.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.