BILL LOCKYER Attorney General GREGORY L. GONOT Deputy Attorney General
THE HONORABLE BRUCE McPHERSON, SECRETARY OF STATE, has requested an opinion on the following question:
Is a person who is incarcerated in a local detention facility, such as a county jail, for the conviction of a felony eligible to vote?
 CONCLUSION
A person who is incarcerated in a local detention facility, such as a county jail, for the conviction of a felony is not eligible to vote.
 ANALYSIS
Section 4 of article II of the California Constitution provides:
 "The Legislature shall prohibit improper practices that affect elections and shall provide for the disqualification of electors while mentally incompetent or imprisoned or on parole for the conviction of a felony." (Italics added.)[1]
The question presented for resolution concerns the meaning of the term "imprisoned" as used in the phrase "imprisoned or on parole for the conviction of a felony." Does it refer only to incarceration in a state prison, or does it also include confinement in a local detention facility such as a county jail? We conclude that it includes incarceration in a local detention facility.
Preliminarily, we note that a person who has been convicted of a felony may be confined in a local detention facility, depending upon a variety of circumstances. Penal Code section 18, for example, states in part:
 ". . . [E]very offense which is prescribed by any law of the state to be a felony punishable by imprisonment in any of the state prisons or by a fine, but without an alternate sentence to the county jail, may be punishable by imprisonment in the county jail not exceeding one year or by a fine, or by both."
Based upon felony conviction information submitted by the superior courts to the Criminal Justice Statistics Center, Bureau of Criminal Information and Analysis, Department of Justice (see Pen. Code, §§ 13010, 13012, 13151), the most common disposition of a felony conviction is confinement in a local jail as a condition of probation, either where the court has suspended imposition of the potential state prison sentence and has suspended pronouncing judgment on the felony offense (see Pen. Code, §§ 1203, 1203.1, subd. (a); People v. Livingston (1970)4 Cal.App.3d 251, 255; 3 Witkin Epstein, Cal. Criminal Law (2d ed. 2000) Punishment, § 248, p. 330) or the court has imposed a prison sentence but suspended its execution pending the defendant's successful completion of probation, including time in jail (see People v. Howard (1997) 16 Cal.4th 1081, 1084, 1087;In re DeLong (2001) 93 Cal.App.4th 562, 570-571). In addition, the California Department of Corrections may contract with cities and counties for the confinement of prison inmates under the terms of Penal Code section 2910:
 "(a) The Director of Corrections may enter into an agreement with a city, county, or city and county, to permit transfer of prisoners in the custody of the Director of Corrections to a jail or other adult correctional facility of the city, county, or city and county, if the sheriff or corresponding official having jurisdiction over the facility has consented thereto. The agreement shall provide for contributions to the city, county, or city and county toward payment of costs incurred with reference to such transferred prisoners.
 "(b) When an agreement entered into pursuant to subdivision (a) is in effect with respect to a particular local facility, the Director of Corrections may transfer prisoners whose terms of imprisonment have been fixed and parole violators to the facility.
 "(c) Prisoners so transferred to a local facility may, with approval of the Director of Corrections, participate in programs of the facility, including work furlough rehabilitation programs.
 "(d) Prisoners transferred to such facilities are subject to the rules and regulations of the facility in which they are confined, but remain under the legal custody of the Department of Corrections and shall be subject at any time, pursuant to the rules and regulations of the Director of Corrections, to be detained in the county jail upon the exercise of a state parole or correctional officer's peace officer powers as specified in Section 830.5, with the consent of the sheriff or corresponding official having jurisdiction over the facility.
". . . . . . . . . . . . . . . . . . . . . . . . . ."
Other situations may result in the temporary confinement of a person in a local jail for the conviction of a felony.
The principles of construction to be applied in interpreting a constitutional provision are well settled. As stated by the court in Thompson v. Department of Corrections (2001) 25 Cal.4th 117,122: "In interpreting a constitution's provision, our paramount task is to ascertain the intent of those who enacted it. [Citation.]" In determining the voters' intent, we "look first to the language of the constitutional text, giving the words their ordinary meaning." (Leone v. Medical Board (2000)22 Cal.4th 660, 665.) "[T]he words used should be accorded the ordinary and usual meaning given them among people by whose vote they were adopted [citation]. . . ." (Flood v. Riggs, supra,
80 Cal.App.3d at p. 152.) Where a term is not further defined in the constitutional provision, "it can be assumed to refer not to any special term of art, but rather to a meaning that would be commonly understood by the electorate." (People ex rel. Lungrenv. Superior Court (1996) 14 Cal.4th 294, 302.) "To determine the common meaning, a court typically looks to dictionaries." (Consumer Advocacy Group, Inc. v. Exxon Mobil Corp. (2002)104 Cal.App.4th, 438, 444.)
"Imprison" means "to put in prison: confine in a jail." (Webster's 3d New Internat. Dist. (2002) p. 1137.) A "prison" is "a place or condition of confinement or restraint" or "a building or other place for the safe custody or confinement of criminals or others." (Id. at p. 1804.) The most common definition of "jail" is "prison." (Id. at p. 1208.) Penal Code section 4000
specifies the uses of a county jail as including "the confinement of persons sentenced to imprisonment therein upon a conviction for crime." In People v. Carter (1981) 117 Cal.App.3d 546, 550, the court noted that "a jail is a place of confinement of persons in lawful custody," including "for both temporary custody and for long term custody of trustee prisoners." (Fn. omitted.)
Typically, then, the word "imprisoned" refers to confinement in a local jail in addition to confinement in a state prison. The phrase "imprisoned in jail," or some variation thereof, is found not only throughout the Penal Code (see, e.g., Pen. Code, §§ 17,18, 19, 136.7, 166, 186.22, 243, 273h, 273.5, 273.6, 273.65, 286,288a, 289, 296.1, 298.1, 337a, 337.2, 381a, 383, 412, 422.77,499, 551, 560.6, 626.9, 647, 647d, 666, 919, 969b, 1203.1, 1208,1208.5, 1567, 2042, 2903, 4103, 4104, 4133, 6301, 11149.3,12025), but also in the Civil Code (Civ. Code, § 52.1, 1812.125,1812.217, 2924h), the Code of Civil Procedure (Code Civ. Proc., §1997), the Corporations Code (Corp. Code, §§ 1823, 1896, 1913.5, 12102., 14752, 17700, 18349.5, 18435, 22753, 22780, 23065, 31880, 34201, 50500), the Fish and Game Code (Fish G. Code, § 11036), the Food and Agricultural Code (Food Agr. Code, § 41511), the Government Code (Gov. Code, § 36903), the Health and Safety Code (Health Saf. Code, § 1390), the Insurance Code (Ins. Code, §988), the Labor Code (Lab. Code, §§ 1303, 1308, 1309, 1391), the Revenue and Taxation Code (Rev. Tax. Code, §§ 9351, 9353,30472, 30474, 30475, 30476), the Vehicle Code (Veh. Code, §§14601.4, 23109, 23536) and the Water Code (Wat. Code, § 71689.27), among other statutory provisions. The courts (see, e.g., In re Jennings (2004) 34 Cal.4th 254, 262) and our prior opinions (see, e.g. 73 Ops.Cal.Atty.Gen. 45, 47 (1990)) have noted this common "imprisoned in jail" phraseology. California law is thus consistent with the ordinary definition of "imprisoned" as including confinement in a local jail.
If any doubt remained as to the voters' intent in using the word "imprisoned," we need only examine the ballot pamphlet for the 1974 General Election at which the provision was adopted as part of Proposition 10. "When an initiative measure's language is ambiguous, we refer to other indices of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet. [Citations.]" (People v. Birkett (1999)21 Cal.4th 226, 243.) "[W]hen . . . the enactment follows voter approval, the ballot summary and arguments and analysis presented to the electorate in connection with a particular measure may be helpful in determining the probable meaning of uncertain language." (Amador Valley Joint Union High Sch. Dist. v. StateBd. of Equalization (1978) 22 Cal.3d 208, 245-246; accord,People ex rel. Lungren v. Superior Court, supra, 14 Cal.3d at p. 306.)
Here, the 1974 ballot pamphlet described the proposed constitutional amendment as granting the right to vote to felonsafter they had completed their sentences, including parole, and are once again fully participating members of society. The argument in favor of Proposition 10 stated in part:
 "The objective of reintegrating ex-felons into society is dramatically impeded by continued restriction of the right to vote. This restriction is a lifelong reminder of second class citizenship — inferiority — often because of one mistake committed years earlier. The daily lives of all citizens are deeply affected and changed by the decisions of government. Full citizen participation in these decisions should be encouraged, not prevented. This participation — electing responsive officials, voting in local school board elections on issues directly affecting the education of our children, expressing views on statewide issues of major significance — all this is precluded by this unnecessary restriction. The President's Commission on Law Enforcement and the Administration of Justice and the President's Commission on the Causes and Prevention of Violence, have strongly endorsed full voting rights for ex-felons. A majority of states, including four that have restored the right since 1972, allow ex-felons to vote. So should we. Let us eliminate this needless restriction." (Ballot Pamp., Gen. Elec. (Nov. 5, 1974) argument in favor of Prop. 10, p. 38.)
No indication may be found in the 1974 ballot pamphlet that the electorate intended to grant voting rights to those who were still in custody. Indeed, even those no longer behind bars and otherwise participating in society would nevertheless be ineligible to vote while serving their terms of parole.
The only reported case that has considered the matter, Peoplev. Montgomery (1976) 61 Cal.App.3d 718, is in agreement that the common definition of "imprisoned," including confinement in a local detention facility, is to be applied for purposes of article II, section 4, of the Constitution. The defendant inMontgomery argued that Penal Code section 165, which prohibits voting by anyone convicted of bribery, violated the equal protection clause of the Fourteenth Amendment. (Id. at. p. 733.) The court rejected the argument, noting in part that "defendant's complaint . . . is premature because he is presently serving a sentence of two years probation on condition he serve six months in the county jail." (Id. at p. 733.) The court explained: "Until he completes his current sentence, he is disqualified from voting under the California Constitution. . . ." (Ibid.)[2] The court's analysis is thus consistent with defining "imprisoned" in its usual sense as including confinement in a local detention facility.
We recognize, however, that the Secretary of State has long administratively construed the term "imprisoned" as referring only to felons who are in prison. This administrative construction finds some support in the language of Elections Code section 2101:
 "A person entitled to register to vote shall be a United States citizen, a resident of California, not in prison or on parole for the conviction of a felony, and at least 18 years of age at the time of the next election."
"[I]t is well settled that when the Legislature is charged with implementing an unclear constitutional provision, the Legislature's interpretation of the measure deserves great deference. [Citations.]" (People v. Birkett, supra, 21 Cal.4th at p. 244.) "`When the Constitution has a doubtful or obscure meaning or is capable of various interpretations, the construction placed thereon by the Legislature is of very persuasive significance.'" (Methodist Hosp. of Sacramento v.Saylor (1971) 5 Cal.3d 685, 693.) Also, any ambiguity in a constitutional provision or statute prohibiting the right to vote is to be construed in favor of eligibility to vote. (SeePeterson v. City of San Diego (1983) 34 Cal.3d 225, 229-230
["restrictions on exercise of the franchise will be strictly scrutinized"]; Hedlund v. David (1956) 47 Cal.2d 75, 81 ["Every reasonable presumption and interpretation is to be indulged in favor of the right of the people to exercise the elective process"]; see also Stanton v. Panish (1980) 28 Cal.3d 107,115; Otsuka v. Hite (1966) 64 Cal.2d 596, 603-604; McMillan v.Siemon (1940) 36 Cal.App.2d 721, 726 ["no construction of an election law should be indulged that would disfranchise any voter if the law is reasonably susceptible of any other meaning"]).[3]
While the Secretary of State's interpretation of election laws is to be accorded "great weight" (In re Dannenberg (2005)34 Cal.4th 1061, 1082 ["we accord significant weight and respect to the long-standing construction of a law by the agency charged with its enforcement"]; Highland Ranch v. Agricultural LaborRelations Bd. (1981) 29 Cal.3d 848, 859 ["`[t]he construction of a statute by the officials charged with its administration must be given great weight'"]), we cannot ignore the common definition of the term "imprisoned," the ballot pamphlet describing the electorate's intent in approving Proposition 10, and People v.Montgomery, supra, 61 Cal.App.3d 718, all of which support a definition of "imprisoned" that includes confinement in a local detention facility. In the final analysis, it is not the manner in which the Secretary of State or the Legislature has interpreted the law, but rather what the voters intended when they approved Proposition 10 in 1974.
We conclude that a person who is incarcerated in a local detention facility, such as a county jail, for the conviction of a felony is not eligible to vote.
[1] This constitutional provision was adopted by the electorate at the November 5, 1974, General Election, as section 3 of article II; it was renumbered section 4 on June 8, 1976. (SeeFlood v. Riggs (1978) 80 Cal.App.3d 138, 144-148.)
[2] Since probation is different from parole (see Pen. Code, §§1168, 1170, 3000), we may assume that the court meant "his current [jail] sentence."
[3] Because of this principle of construction, the term "conviction" would normally not refer to someone on probation and confined in a local jail where a civil disability, such as the denial of the right to vote, was at stake. (See Boyll v. StatePersonnel Board (1983) 146 Cal.App.3d 1070, 1073-1074; Truchonv. Toomey (1953) 116 Cal.App.2d 736, 744-745.)