[No. B249264. Second Dist., Div. Three. June 27, 2014.]

THE PEOPLE, Plaintiff and Appellant, v.
CARLOS MIGUEL IRAHETA, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of parts 2. and 3. of the Discussion.

## Counsel

Jackie Lacey, District Attorney, Roberta Schwartz, Phyllis C. Asayama and Matthew Brown, Deputy District Attorneys, for Plaintiff and Appellant.

Marilee Marshall, under appointment by the Court of Appeal, for Defendant and Respondent.

## Opinion

**ALDRICH, J.**—A jury found defendant and respondent Carlos Miguel Iraheta guilty of shooting at an occupied motor vehicle in violation of Penal Code section 246.[1] Before sentencing, Iraheta moved for a new trial on several grounds, including that the trial court had erred by declining to instruct the jury on imperfect self-defense in relation to the section 246 charge. The trial court concluded it had committed instructional error, and granted Iraheta's motion. Plaintiff and appellant the People of the State of California appeal the trial court's ruling. In the published portion of this opinion, we agree with the People that the court properly declined to instruct on imperfect self-defense on the charge of shooting at an occupied motor vehicle, and therefore its ruling granting a new trial was an abuse of discretion. In the unpublished portion, we conclude that the other grounds raised in the new trial motion do not support the trial court's ruling. Accordingly, we reverse the trial court's order and remand for further proceedings.

---

[1] All further undesignated statutory references are to the Penal Code.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts*

A. *People's evidence*

Viewed in accordance with the usual rules governing appellate review, the evidence relevant to the issues raised on appeal established the following.[2]

### (1) *The December 2002 shooting of Michael Orozco*

On December 20, 2002, at approximately 5:30 p.m., Noe Martinez drove his white Honda Civic to the Jr. Market in Inglewood. Inside the market, Jose Tovar, whom Martinez did not know, kept staring at him, giving him a bad feeling. When Martinez left the market, Tovar walked toward Martinez's Honda, and pulled out a cellular telephone when a police car pulled up. Tovar was a member of the Inglewood 13 criminal street gang.

Martinez drove to his friend Michael Orozco's home, where he socialized and drank beer. At approximately 8:30 that evening, Orozco and Martinez headed for another friend's home. Because Martinez was feeling "buzzed," Orozco drove Martinez's Honda. Their route took them past the Jr. Market.

Meanwhile, Iraheta drove his girlfriend Melody Maciel, his younger brother Richard Iraheta,[3] and his stepbrother Alexis Moreno to the Jr. Market in his Camaro. Once there, he stopped to talk to his friend, Tovar. Martinez's car passed by the market, and Tovar pointed at it. Martinez saw Tovar's gesture, and told Orozco to "step on it."

When Martinez and Orozco drove away, Iraheta followed them in his Camaro. Orozco drove to 65th Street and, at Martinez's direction, stopped the car. Martinez exited the Honda to talk to the people in the Camaro. He was wearing a red hat and a dark red jacket or shirt. The Camaro pulled up slowly. Iraheta was driving. Martinez lifted up his hands and said, "what's going on?" As the Camaro passed the Honda, Iraheta fired a single gunshot at the Honda, and sped off. The shot shattered the Honda's driver's side window and hit Orozco in the neck, fatally wounding him. Neither Orozco nor Martinez was armed.

### (2) *The investigation*

Officers stopped the Camaro shortly after the shooting. Iraheta was driving. One of the officers found a gun under the Camaro's front passenger seat,

---

[2] Additional evidence will be discussed where relevant, *post.*

[3] For ease of reference, we hereinafter sometimes refer to Richard Iraheta by his first name.

obscured by trash. The gun was loaded with six rounds, one of which was expended. Forensic testing revealed that the bullet that killed Orozco had been fired from the gun. At a field showup conducted shortly after the shooting, Martinez identified the Camaro and Iraheta. Officers did not find a gun in the Honda.

### (3) *Statements by the other occupants of the Camaro*

Moreno and Maciel testified that as it passed the Jr. Market, the Honda slowed and then sped off. En route to Maciel's house, the group came upon the Honda stopped in the middle of the road, blocking their path. Maciel asked Orozco to move. Martinez approached the back of the Camaro. Both Maciel and Moreno heard Richard say, "he's got a gun." Iraheta then pulled a gun from under the seat and fired a single shot at the Honda. In a recorded police interview, Moreno stated that Iraheta had followed the Honda after leaving the market.

### (4) *Gang evidence*

A gang expert testified regarding the characteristics and activities of the Inglewood 13 gang. Among other things, he opined that Iraheta was an Inglewood 13 gang member, based on his "West L.A." tattoo, attire, and association with other gang members. When given a hypothetical based on the facts of the case, the expert opined that the motive for the shooting was gang related.

### B. *Defense evidence*

Iraheta testified in his own defense. At the time of the shooting, he was 19 years old, had no criminal record, was in the military reserves, and was not a gang member. He and Maciel were planning on getting married, and he had just been hired by Bank of America and was enrolled to start classes at ITT Tech. His "West L.A." tattoo was not a gang tattoo. He had the gun for protection because he had been beaten up near his house by gang members a few months before the shooting.

On the night of the shooting, he drove by the Jr. Market and his friend Tovar flagged him down. While he and Tovar were talking, the Honda passed by. Tovar warned Iraheta that the occupants of the Honda had been "cruising around and looking for trouble" and had "mad-dogg[ed]" him earlier that day. Iraheta left the Jr. Market a few minutes later. His route took him to 65th Street. The Honda was stopped in the street, blocking it. Martinez was standing outside the car, staring at Iraheta. Iraheta signaled to Martinez to move the car. Martinez then put up his hands up as if to say "What's up?"

Iraheta tried to go around the Honda. Martinez approached the back of the Camaro. When the Camaro was approximately parallel to the Honda, Richard said, "keep going. He gots a gun." Iraheta saw Orozco looking at him and saying something. Orozco had a small pistol in his hand and was tapping it on the Honda's window. Iraheta fired one round while simultaneously hitting the gas pedal. On cross-examination, Iraheta admitted he had previously testified that he was unsure whether Orozco had a gun or a cellular telephone in his hand.[4]

### 2. *Procedure*

An information filed on May 1, 2003, charged Iraheta with murder (§ 187, subd. (a)). It also alleged that Iraheta personally and intentionally used and discharged a firearm, causing death (§ 12022.53, subds. (b), (c) & (d)). Iraheta was tried by a jury, convicted of second degree murder with the firearm enhancement, and sentenced to 40 years to life in prison. We affirmed his conviction in an unpublished opinion. (*People v. Iraheta* (Apr. 30, 2008, B173223.)[5] Among other things, we held Iraheta was properly convicted of second degree felony murder. (*People v. Iraheta, supra,* B173223.)

The California Supreme Court subsequently granted Iraheta's petition for review and, on June 10, 2009, transferred the case back to us with directions to vacate our decision and reconsider the cause in light of *People v. Chun* (2009) 45 Cal.4th 1172 [91 Cal.Rptr.3d 106, 203 P.3d 425]. Upon reconsideration, we concluded *Chun* required reversal of Iraheta's murder conviction. (*People v. Iraheta* (Nov. 20, 2009, B173223) [nonpub. opn.].)[6]

The People filed an amended information on October 5, 2010, again charging Iraheta with murder (§ 187, subd. (a); count 1), and a second amended information on October 3, 2011, adding a second count of shooting at an occupied motor vehicle (§ 246; count 2). Iraheta's retrial commenced in March 2013. The jury found Iraheta guilty of shooting at an occupied motor vehicle, and found true the allegation he had personally and intentionally used and discharged a firearm, causing Orozco's death. It deadlocked on count 1, the murder charge, and the court declared a mistrial on that count.

---

[4] The defense presented additional witnesses, and the People presented rebuttal witnesses. Because this testimony is not directly relevant to the issues presented on appeal, we do not detail it here.

[5] Prior to our April 30, 2008 opinion, we affirmed Iraheta's conviction in an unpublished opinion filed on January 26, 2006. Upon learning that Iraheta's appellate counsel had abandoned representation of him prior to the conclusion of the appeal, we recalled the remittitur, vacated the January 26, 2006 opinion, and directed the appointment of new counsel. (*People v. Iraheta, supra,* B173223.)

[6] As the People request, we take judicial notice of our unpublished opinions filed in this matter on April 30, 2008, and November 20, 2009. (Evid. Code, §§ 452, subd. (d), 459.)

Before sentencing, Iraheta filed motions for a new trial and arrest of judgment on a variety of grounds. On May 9, 2013, the trial court granted the new trial motion on the ground that it had erred in failing to instruct the jury on imperfect self-defense in regard to count 2, shooting at an occupied motor vehicle in violation of section 246.

On May 31, 2013, the People appealed the trial court's order. (§ 1238, subd. (a)(3).) On July 24, 2013, we granted the People's petition for a writ of supersedeas and issued a stay of proceedings pending finality of this appeal.

## DISCUSSION

1. *The trial court correctly declined to instruct on imperfect self-defense on count 2, shooting at an occupied motor vehicle.*

### A. *Additional facts*

The defense requested that the court instruct the jury on "imperfect" self-defense as to both charged counts.[7] Defense counsel also requested an instruction on mistake of fact.[8] Defense counsel urged that imperfect self-defense could negate malice, an element of shooting at an occupied motor vehicle in violation of section 246. The People objected. The prosecutor pointed out that imperfect self-defense was not actually a defense, but operated only to reduce a murder to manslaughter, and was inapplicable to crimes other than murder. The trial court concluded the imperfect self-defense instruction was inapplicable to the charge of shooting at an occupied motor vehicle. It further reasoned that "mistake of fact is basically imperfect self-defense," and declined to give that instruction because it was cumulative of the self-defense instructions already given.

---

[7] The defense proposed the following special instruction: "You should consider whether the defendant acted in 'imperfect self-defense' and 'imperfect defense of others' during your deliberations in connection with the offense of Penal Code Section 246, Shooting into an Occupied Vehicle . . . and the enhancement . . . . [¶] If you find that the defendant acted in 'imperfect self-defense' or 'imperfect defense of others,' then you may not find beyond a reasonable doubt that the defendant acted with the element of 'malice' in connection with CALCRIM [No.] 965. 'Malice' is an element of the offense of Penal Code Section 246 that must be proven beyond a reasonable doubt. Accordingly, if you do not find that the prosecution has proven the element of malice, then you must find the defendant not guilty of the offense of Penal Code Section 246." The proposed instruction then went on to define imperfect self-defense and great bodily injury, and explained that the difference between self-defense and imperfect self-defense was whether the defendant's belief in the need to use deadly force was reasonable.

[8] That proposed instruction was as follows: "You should consider whether the mistake-of-fact doctrine applies to the defenses of self-defense and defense of others during your deliberations in conjunction with all offenses and enhancements, including Penal Code Section 246, Shooting into an Occupied Vehicle . . . and the enhancement . . . . [¶] The mistake-of-fact doctrine is defined in CALCRIM [No.] 3406."

Thereafter, the trial court instructed the jury on "perfect" self-defense as to both the murder and the shooting at an occupied motor vehicle charges.[9] It instructed on imperfect self-defense as to the murder charge only, as well as the difference between "perfect" and "imperfect" self-defense.[10]

During deliberations, two jurors sent a note to the court asking whether, in regard to the section 246 charge and the lesser included offense of shooting a firearm in a grossly negligent manner, "the term self-defense include[s] both imperfect and complete self defense? [¶] Or in those instances does 'self-defense' only mean complete self-defense?" Consistent with its earlier ruling, and over a defense objection, the trial court informed the jury: "Imperfect self[-]defense does not apply to [section] 246 (willful and malicious shooting

[9] CALCRIM No. 505, as given here, provided in pertinent part: "The defendant is not guilty of murder if he was justified in killing someone in self-defense or defense of another. The defendant acted in lawful self-defense or defense of another . . . if: [¶] 1. The defendant reasonably believed that he or Melody Maciel, Richard Iraheta, and Alexis Moreno were in imminent danger of being killed or suffering great bodily injury; [¶] 2. The defendant reasonably believed that the immediate use of deadly force was necessary to defend against that danger; [¶] AND [¶] 3. The defendant used no more force than was reasonably necessary to defend against that danger. [¶] Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was imminent danger of death or great bodily injury to himself or someone else. Defendant's belief must have .been reasonable and he must have acted only because of that belief. The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation. If the defendant used more force than was reasonable, the killing was not justified." The instruction also advised that the People had the burden of proving beyond a reasonable doubt that the killing was not justified.

The court instructed on self-defense in regard to section 246 as follows: "You should consider whether the defendant acted in 'self-defense' and 'defense of others' during your deliberations in connection with the offense of Penal Code Section 246, Shooting into an Occupied Vehicle (CALCRIM [No.] 965 defines the elements of the offense of Penal Code Section 246) and the enhancement (CALCRIM [No.] 3150 defines the elements of the enhancement). [¶] If you find that the defendant acted in 'self-defense' or 'defense of others,' then you must find the defendant not guilty of the offense of Penal Code Section 246, Shooting into an Occupied Vehicle. [¶] If you find that the defendant acted in 'self-defense' or 'defense of others,' then you must find the enhancement of Discharging a Firearm Causing Injury or death to be not true." CALCRIM No. 965 reiterated that the People had the burden to prove Iraheta did not act in self-defense in regard to the section 246 charge.

[10] The latter instruction provided: "A killing that would otherwise be murder is reduced to voluntary manslaughter if the defendant killed a person because he acted in imperfect self-defense or imperfect defense of another. [¶] If you conclude the defendant acted in complete self-defense or defense of another, his action was lawful and you must find him not guilty of any crime. The difference between complete self-defense or defense of another and imperfect self-defense or imperfect defense of another depends on whether the defendant's belief in the need to use deadly force was reasonable. [¶] The defendant acted in imperfect self-defense or imperfect defense of another if: [¶] 1. The defendant actually believed that he or someone else, Melody Maciel, Richard Iraheta, or Alexis Moreno, were in imminent danger of being killed or suffering great bodily injury; [¶] AND [¶] 2. The defendant actually believed that the immediate use of deadly force was necessary to defend against the danger; [¶] BUT [¶] 3. At least one of those beliefs was unreasonable."

into an occupied motor vehicle) or [section] 246.3 (negligently shooting into an occupied motor vehicle). [¶] Only self-defense, or defense of another apply to these two charges."

Iraheta argued in his new trial motion that the jury should have been instructed that imperfect self-defense applied to the section 246 charge. Iraheta urged, as he had earlier, that an unreasonable belief in the need for self-defense could negate malice, an element of section 246. The People countered that the theory of imperfect self-defense is inapplicable to the crime of shooting at an occupied motor vehicle, and the legal principles relevant to mistake of fact were covered by other instructions.

Relying on *People v. McKelvy* (1987) 194 Cal.App.3d 694 [239 Cal.Rptr. 782], the trial court granted the new trial motion on the ground it had erred by failing to instruct on imperfect self-defense in regard to count 2, shooting at an occupied vehicle. The court reasoned that the authorities cited by the People (*People v. Watie* (2002) 100 Cal.App.4th 866 [124 Cal.Rptr.2d 258]; *People v. Sekona* (1994) 27 Cal.App.4th 443 [32 Cal.Rptr.2d 606]) held only that an imperfect self-defense instruction need not be given sua sponte, whereas here the defense requested the instruction. The court explained: "[T]he reasoning in *McKelvy* makes sense to me. . . . [I]f this were a case where there were no cars involved and somebody is on one side of the sidewalk and another person is on the other side, and the exact same facts where somebody exhibits arguably a gun which in retrospect may not have been a gun, and the assailant shoots and kills that person, you have murder or manslaughter depending if it's imperfect self-defense. [¶] But if [you] put walls around the people in a car or a house, you don't get the benefit of that argument. [¶] And it's hard conceptually for me to grasp or associate any common sense with that argument unless there's some policy reasons I'm just not considering."

## B. *Discussion*

A criminal defendant may move for a new trial on specified grounds, including instructional error. (§ 1181; *People v. Ault* (2004) 33 Cal.4th 1250, 1260 [17 Cal.Rptr.3d 302, 95 P.3d 523]; *People v. Masotti* (2008) 163 Cal.App.4th 504, 507 [77 Cal.Rptr.3d 483].) The trial court has broad discretion in ruling on a new trial motion, and its decision will be disturbed only for clear abuse of that discretion. (*Ault*, at p. 1260; see generally *People v. Richmond* (1991) 2 Cal.App.4th 610, 618 [3 Cal.Rptr.2d 252].) Such an abuse of discretion arises if the court's decision is based on an incorrect legal standard. (*People v. Knoller* (2007) 41 Cal.4th 139, 156 [59 Cal.Rptr.3d 157, 158 P.3d 731].)

The People urge the trial court abused its discretion by granting a new trial here, because an imperfect self-defense theory cannot apply to crimes other than murder. Iraheta, on the other hand, urges that the trial court's ruling was correct, because imperfect self-defense can operate as "a theory in mitigation to negate the element of malice."

"The doctrine of self-defense embraces two types: perfect and imperfect." (*People v. Rodarte* (2014) 223 Cal.App.4th 1158, 1168 [168 Cal.Rptr.3d 12].) "Perfect" self-defense requires that a defendant have an honest and reasonable belief in the need to defend himself or another. (*Ibid.*) Imperfect self-defense, sometimes referred to as a "*Flannel* defense" (*People v. Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1]; *People v. Quintero* (2006) 135 Cal.App.4th 1152, 1166 [37 Cal.Rptr.3d 884]), "is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury. [Citation.] Such a killing is deemed to be without malice and thus cannot be murder." (*People v. Booker* (2011) 51 Cal.4th 141, 182 [119 Cal.Rptr.3d 722, 245 P.3d 366]; see *People v. Duff* (2014) 58 Cal.4th 527, 561–562 [167 Cal.Rptr.3d 615, 317 P.3d 1148].) Imperfect self-defense is therefore a " 'theor[y] of partial exculpation' that reduce[s] murder to manslaughter by negating the element of malice." (*People v. Moye* (2009) 47 Cal.4th 537, 549 [98 Cal.Rptr.3d 113, 213 P.3d 652].) As explained by our Supreme Court: " '[U]nreasonable self-defense' is . . . not a true defense; rather, it is a shorthand description of one form of voluntary manslaughter. And voluntary manslaughter, whether it arises from unreasonable self-defense or from a killing during a sudden quarrel or heat of passion, is not a defense but a crime; more precisely, it is a lesser offense included in the crime of murder." (*People v. Barton* (1995) 12 Cal.4th 186, 200–201 [47 Cal.Rptr.2d 569, 906 P.2d 531]; see *People v. Elmore* (2014) 59 Cal.4th 121, 134 [172 Cal.Rptr.3d 413, 325 P.3d 951].)

■ "It is settled that a violation of section 246 is a general intent crime." (*People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1500 [105 Cal.Rptr.3d 597]; see *People v. Ramirez* (2009) 45 Cal.4th 980, 985, fn. 6 [89 Cal.Rptr.3d 586, 201 P.3d 466]; *People v. Overman* (2005) 126 Cal.App.4th 1344, 1356 [24 Cal.Rptr.3d 798]; *People v. Watie, supra*, 100 Cal.App.4th at p. 879; *People v. Jischke* (1996) 51 Cal.App.4th 552, 556 [59 Cal.Rptr.2d 269].) Section 246 provides in pertinent part: "Any person who shall *maliciously and willfully* discharge a firearm at an . . . occupied motor vehicle . . . is guilty of a felony. . . ." (Italics added.) "Conviction under a statute proscribing conduct done 'willfully and maliciously' does not require proof of a specific intent. [Citation.]" (*People v. Licas* (2007) 41 Cal.4th 362, 366 [60 Cal.Rptr.3d 31, 159 P.3d 507]; see *People v. Rodarte, supra*, 223 Cal.App.4th at p. 1168; *Hernandez,* at p. 1500; *People v. Atkins* (2001) 25 Cal.4th 76, 85–86 [104 Cal.Rptr.2d 738, 18 P.3d 660]; *People v. Alvarado* (2005) 125 Cal.App.4th 1179, 1188 [23 Cal.Rptr.3d 391].) "Section 7, subdivision 1,

states: ' "willfully," . . . implies simply a purpose or willingness to commit the act . . . referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage.' 'Maliciously' is defined as 'a wish to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' (§ 7, subd. 4.)" (*Licas,* at p. 366.) " ' "When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intent is deemed to be a general criminal intent. . . . The only intent required for a general intent offense is the purpose or willingness to do the act or omission. [Citation.]" ' " (*Rodarte,* at p. 1168; see *Hernandez,* at p. 1500; *People v. Verlinde* (2002) 100 Cal.App.4th 1146, 1166–1167 [123 Cal.Rptr.2d 322].) Thus, for section 246, " '[a]s for all general intent crimes, the question is whether the defendant intended to do the proscribed act.' [Citation.] 'In other words, it is sufficient for a conviction [of section 246] if the defendant intentionally did that which the law declares to be a crime.' [Citation.]" (*Overman,* at p. 1356; see *Jischke,* at p. 556.)

In granting Iraheta's new trial motion, the trial court relied primarily on *People v. McKelvy, supra,* 194 Cal.App.3d 694. In *McKelvy,* a single justice concluded the unreasonable self-defense doctrine applied to the general intent crime of mayhem, and the court had a sua sponte duty to instruct on the doctrine. (*Id.* at pp. 702–704.) *McKelvy* reasoned that inclusion of the word "maliciously" in the mayhem statute required proof of something more than an intentional act. The lead opinion reasoned: "Although the 'malice' required for the offense of mayhem differs from the 'malice aforethought' with which *Flannel* was concerned, it is equally true in both cases that the requisite state of mind is inconsistent with a genuine belief in the need for self-defense. One who truly believes there is a need for self-defense cannot be said to act with intent to 'vex, injure or annoy' and may be found guilty of no more than an assault or battery." (*Id.* at p. 702, fn. omitted.)

*McKelvy* is not persuasive for several reasons. First, the lead opinion did not command a majority for its conclusion because the two nonauthoring justices concurred only in the result. (See *People v. Vallejo* (2013) 214 Cal.App.4th 1033, 1040 [154 Cal.Rptr.3d 341] [the *McKelvy* lead opinion "is not binding authority"]; *People v. Quintero, supra,* 135 Cal.App.4th at p. 1166; *People v. Sekona, supra,* 27 Cal.App.4th at p. 451.) Second, the lead opinion's conclusion regarding the imperfect self-defense instruction "was dictum, because the court affirmed the defendant's conviction despite the absence of a Flannel instruction." (*People v. Hayes* (2004) 120 Cal.App.4th 796, 801–802 [15 Cal.Rptr.3d 884].) Third, no other reported decision has followed *McKelvy,* and its reasoning "has been uniformly rejected." (*People v. Rodarte, supra,* 223 Cal.App.4th at p. 1169; see *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 835 [74 Cal.Rptr.3d 416].) Indeed, appellate courts

since *McKelvy* have held imperfect self-defense instructions are inapplicable or need not be given sua sponte when the defendant is charged with mayhem.

*People v. Sekona, supra*, 27 Cal.App.4th 443, held that a trial court has no sua sponte duty to instruct on unreasonable self-defense in relation to a mayhem charge. (*Id.* at pp. 450, 457.) In a scholarly opinion, *Sekona* explained that no statute required, and no Supreme Court case had held, that an unreasonable belief in the need for self-defense negated mayhem's malice element. Because application of the imperfect self-defense doctrine to may-hem was not a general principle of law, a trial court had no sua sponte duty to instruct on it. (*Id.* at pp. 450–451.) Further, the California Supreme Court had not held such a sua sponte duty existed "in any context other than murder." (*Id.* at p. 451.) *People v. Flannel, supra*, 25 Cal.3d 668, considered only the " 'malice aforethought' " required for murder, not the " 'malice' " required for mayhem, which are legally distinct concepts. (*Sekona*, at pp. 452–453.) The concept of malice under section 7, subdivision 4 was distinguishable from the malice aforethought required for murder. (*Sekona*, at p. 453; *People v. Rodarte, supra*, 223 Cal.App.4th at p. 1169.) *Sekona* traced the development of the crime of mayhem under the English common law and California's statutory scheme, and concluded that unlike the crime of murder, "mayhem involves a different requisite mental state and has no statutory history recognizing a malice aforethought element or the availability of the *Flannel* defense." (*Sekona*, at p. 457.)

■ *People v. Hayes, supra*, 120 Cal.App.4th at page 801, similarly concluded the doctrine of imperfect self-defense "has no application to a charge of mayhem." The court explained: "We do not agree that a belief in the necessity for self-defense can negate an 'intent to vex, injure or annoy.' Such an intent lacks the crucial characteristic of 'malice aforethought' said in *Flannel* to justify the defense, i.e., awareness that one's conduct does not conform to the expectations of society." (*Id.* at p. 802.) "[M]alice afore-thought reflects or embodies a realization by the actor that his or. her conduct *violates social expectations.* It is this realization that cannot be reconciled with an actor's belief that he or she is acting in self-defense, because society approves the reasonable use of force to that end. [¶] This rationale cannot be extended to the more general concept of 'malice' as defined in section 7 and incorporated in the statutory definition of mayhem. That definition connotes no element of knowing violation of social norms. It requires only [an] intent to vex, injure, or annoy. A belief that one is acting in self-defense, whether reasonable or unreasonable, has no tendency to negate the element of malice. Indeed the intent to vex, injure, or annoy may be present when one acts in *reasonable* self-defense. Such a circumstance affords a defense not because it negates the element of malice but because it *excuses or justifies* the conduct in question despite the intent to injure." (*Id.* at p. 803, fn. omitted.) The court summed up: "[W]hereas 'malice aforethought' betokens a willingness to

violate social standards of conduct, 'malice' under section 7, subdivision 4 requires only an intent to injure, vex, or annoy. One who believes his or her conduct is necessary for self-defense does not manifest a willingness to violate social norms, but may very well manifest a desire to injure. It follows that the *Flannel* defense has no application to a charge of mayhem." (*Id.* at p. 804.)

Other cases are in accord. (See *People v. Quintero, supra,* 135 Cal.App.4th at p. 1167 [the *Sekona* and *Hayes* rationale that imperfect self-defense is inapplicable to the crime of mayhem also pertains to aggravated mayhem]; *People v. Szadziewicz, supra,* 161 Cal.App.4th at p. 836 ["Because the theory of unreasonable self-defense does not apply to a charge of aggravated mayhem, the trial court had no duty to instruct on that theory . . . either sua sponte or on request."].)

 Several cases have likewise held an imperfect self-defense instruction need not be given sua sponte or is inapplicable to section 246 and similar crimes. In *People v. Watie, supra,* 100 Cal.App.4th 866, as here, the defendant was charged with violation of section 246, among other offenses. *Watie* rejected the contention that the trial court erred by failing to sua sponte instruct on imperfect self-defense: "At the time of trial, as now, no authority suggests that the nondefense of imperfect, or unreasonable, self-defense could apply in a prosecution for violation of section 246. Such a legal theory would be at odds with *Barton*'s characterization of unreasonable self-defense as a species of voluntary manslaughter." (*Watie,* at p. 882.) Because no authority so held, application of unreasonable self-defense to a section 246 charge was not a general principle of law requiring sua sponte instruction. (100 Cal.App.4th at p. 882.)

In *People v. Vallejo, supra,* 214 Cal.App.4th 1033, the defendant was convicted of, inter alia, shooting from a motor vehicle (former § 12034, subd. (c), now § 26100, subd. (c)), which, like section 246, required proof the defendant acted maliciously. Relying on *Sekona* and *Hayes, Vallejo* rejected *McKelvy*'s analysis. (*Vallejo,* at p. 1041.)

Most recently—and after the trial court's ruling in the instant matter—our colleagues in Division One held that a trial court did not err by failing to instruct on imperfect self-defense on a charge of shooting from a motor vehicle (§ 26100, subds. (c) & (d).) (*People v. Rodarte, supra,* 223 Cal.App.4th at p. 1171.) In *Rodarte,* as here, the defendant's request for an imperfect self-defense instruction was denied. (*Id.* at p. 1167.) During deliberations the jury asked for clarification of the difference between perfect and imperfect self-defense, and the court advised that imperfect self-defense was inapplicable to the shooting from a motor vehicle counts. (*Ibid.*) *Rodarte*

explained that the doctrine of imperfect self-defense "is limited to the negation of the malice element of murder." (*Id.* at p. 1168.) The court reasoned: "The 'malice' required for mayhem as well as a section 26100, subdivision (c) offense is the 'wish to vex, annoy, or injure another person.' (§ 7, subd. 4.)" (*Rodarte,* at p. 1171.) Relying on *Vallejo, Rodarte* explained: "The unreasonable self-defense theory for murder is based on the principle that a person who believes in the need for self-defense 'lacks the crucial characteristic of "malice aforethought" [which is the] awareness that one's conduct does not conform to the expectations of society.' [Citation.] In contrast, the wish to 'vex, injure, or annoy' connotes a knowing violation of social norms, and is likely to be present even when one acts in reasonable self-defense. [Citation.] As a result, unreasonable self-defense simply has no application to the malicious discharge of a firearm from a motor vehicle. Because the jury was not asked to find defendant harbored 'malice aforethought' in his shooting from a motor vehicle, instruction with CALCRIM No. 604 [(imperfect self-defense)] would have been inappropriate. Shooting from a motor vehicle requires only the general concept of malice as defined in section 7; therefore, instruction [on] imperfect self-defense would have been inappropriate." (*Rodarte,* at p. 1171.)

■ Based on the foregoing, we conclude the trial court did not err by declining to instruct on imperfect self-defense. *Rodarte,* in particular, is on all fours with the instant matter. Although *Rodarte* involved section 26100, subdivision (c) (shooting from a motor vehicle) and the instant case involves section 246 (shooting at an occupied motor vehicle), the statutes contain the same language requiring that the defendant willfully and maliciously discharge a firearm. Indeed, the predecessor to section 26100, subdivision (c), former section 12034, subdivision (c), was patterned after section 246.[11] (*People v. Licas, supra,* 41 Cal.4th at p. 368, fn. 2; see *People v. Hernandez, supra,* 181 Cal.App.4th at p. 1500 [the crimes proscribed by § 246 and former § 12034 are analogous].) We agree with the analysis in *Rodarte* and the cases upon which it relied, and adopt their reasoning here. Because the trial court did not misdirect the jury, its ruling granting the motion for a new trial was an abuse of discretion.[12]

---

[11] Operative January 1, 2012, former section 12034 was repealed and reenacted without substantive change as section 26100. (*People v. Rodarte, supra,* 223 Cal.App.4th at p. 1160, fn. 2.)

[12] Iraheta does not make a separate argument here regarding his request that the jury be instructed on mistake of fact. As the People point out, had the jury concluded Iraheta actually and reasonably believed Orozco had a gun and was going to shoot him or his passengers, this scenario was adequately covered by the instructions given on perfect self-defense. To the extent Iraheta sought an instruction stating that an *unreasonable* mistake of fact was a defense, such an instruction was in essence a restatement of the imperfect self defense instruction, and was properly omitted for the reasons discussed *ante.* (See *People v. Watie, supra,* 100 Cal.App.4th at p. 883; cf. *People v. Lawson* (2013) 215 Cal.App.4th 108, 115 [155 Cal.Rptr.3d

2., 3.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The trial court's order granting a new trial is reversed. The matter is remanded to the trial court with instructions to reinstate the verdict rendered by the jury and to impose sentence accordingly.

Klein, P. J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 1, 2014, S220410.

---

236] [in order for the mistake of fact "defense" to apply, "[f]or general intent crimes, the defendant's mistaken belief must be both actual and reasonable . . ."].)

*See footnote, *ante,* page 611.