Filed 1/21/15  P. v. Ysaguirre CA2/5
**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DEREZ DARNELL YSAGUIRRE,<br><br>    Defendant and Appellant. | B255910<br><br>(Los Angeles County<br>Super. Ct. No. BA398916) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen A. Marcus, Judge.  Reversed in part, modified in part, affirmed in part, and remanded.

Michele A. Douglass, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Timothy M. Weiner, Deputy Attorneys General, for Plaintiff and Respondent.

## I.  INTRODUCTION

A jury convicted defendant, Derez Darnell Ysaguirre, of:  shooting at an occupied vehicle (Pen. Code, § 246)[1] (count 1); discharging a firearm in a grossly negligent manner (§ 246.3, subd. (a)) (count 2); and being a felon in possession of a firearm (§ 29800, subd. (a)(1)) (count 3).  Defendant admitted he had sustained a prior felony robbery conviction within the meaning of sections 667, subdivisions (a)(1) and (b) through (i) and 1170.12.  Defendant was sentenced to 15 years in state prison.  We reverse the count 2 conviction.  We modify the judgment with respect to assessments and conduct credit.  We remand for resentencing on count 3.

## II.  THE EVIDENCE

John Knapp was the deputy director of security for the Church of Scientology (church) in Hollywood.  On June 16, 2012, at approximately 3 a.m., Mr. Knapp was in the church's security control room.  The church building was on Hollywood Boulevard, on the northeast corner of Hollywood Boulevard and Ivar Avenue.  The church had multiple exterior security cameras in the area.  A security guard, Oleksandr Solomko, alerted Mr. Knapp that a fight had broken out on the sidewalk.  Mr. Knapp manipulated the security cameras to observe the fight.  During Mr. Knapp's testimony, the jury viewed surveillance video from several cameras.  Mr. Knapp saw defendant and two other African-American males running west on Hollywood Boulevard.  They turned north on Ivar Avenue.  As he walked north on Ivar Avenue, defendant looked back towards Hollywood Boulevard.  Watching the video at trial, Mr. Knapp testified, "It looks like he's doing something in his waistband or has something in his hand . . . ."  A red truck made a right turn onto Ivar Avenue and headed north.  There was a gunshot.  After the truck passed, defendant and the two other African-American males ran south on

---

[1]    Further statutory references are to the Penal Code except where otherwise noted.

Ivar Avenue and then west on Hollywood Boulevard toward Cahuenga Boulevard. Defendant ran into an east-west alley from Cahuenga Boulevard. He ran about 25 feet into the alley, then walked back toward Cahuenga Boulevard. He squatted down behind a trash dumpster. Defendant exited the alley and ran north on Cahuenga Boulevard where he encountered law enforcement officers. Mr. Knapp went outside the church building to investigate. He found a bullet casing on the Ivar Avenue sidewalk where defendant had been standing when the red truck passed by.

Mr. Solomko created an edited version of the surveillance tape. The jury viewed that edited surveillance video during Mr. Solomko's testimony. Mr. Solomko was in the church's sixth floor dining room with the windows open when he heard a loud argument. From the window, Mr. Solomko saw defendant and two other African-American men on Ivar Avenue. The men were walking back and forth—north, then south, then north again. Mr. Solomko saw a red truck accelerating north on Ivar Avenue. As the red truck passed by, Mr. Solomko heard a gunshot. Mr. Solomko could not see defendant when the gunshot was fired. He did not see anyone actually shooting. After reviewing the video, however, Mr. Solomko saw that defendant raised his hand when the red truck passed. Mr. Solomko testified, "Then I see when truck passing by, I found the guy raising hand look like this (indicating)." Deputy District Attorney Reginald L. Neal described Mr. Solomko's motion: "For the record, the witness raised his right arm up in a 90-degree angle . . . ." The truck slowed after the gunshot, then sped up again. Seconds later, defendant and his two companions crossed Ivar Avenue in a southwest direction toward Hollywood Boulevard. They then continued west on Hollywood Boulevard. Mr. Solomko was communicating with Mr. Knapp by radio. Mr. Knapp was outside with detectives. Mr. Solomko told Mr. Knapp where defendant had been standing when the handgun was apparently discharged. Mr. Knapp went to that place and discovered the bullet casing.

The surveillance video and photographs show that defendant ran around the corner from Hollywood Boulevard and then continued north on Ivar Avenue. Defendant, who is right-handed, put his right hand into his pocket or waistband. He looked down at his

3

hands and did something with them. He looked back towards Hollywood Boulevard. Defendant walked north, then south, back towards Hollywood Boulevard. As he walked back south on Ivar Avenue, he appeared to have his right hand in his pocket or waistband. Defendant's two companions also walked back and forth on Ivar Avenue, looking back towards the corner of Hollywood Boulevard. Defendant walked north again and into the view of a stationary camera. He had an object in his right hand which looks like a gun. He placed the object in his waistband and looked over his shoulder toward Hollywood Boulevard. A red truck turned the corner from Hollywood Boulevard northbound on Ivar Avenue. As the truck neared him, defendant turned toward it. He raised his arms. After the truck passed, defendant lowered his arms and placed the object back in his pocket or waistband. Defendant and his two cohorts then turned and ran.

Mr. Knapp directed Officer John Downey to the alley off Cahuenga Boulevard. Officer Downey discovered a stainless steel .380 semiautomatic handgun underneath an orange traffic cone in the alley. The gun was fully loaded. There was a round in the chamber that was jammed in such a way that the gun could not be fired again. The bullet casing found on the Ivar Avenue sidewalk had been fired from the gun abandoned in the alley. Defendant was detained near the location of the shooting and subsequently arrested. No gunshot residue was found on either of defendant's hands.

Detective Raymond Conboy twice interviewed defendant at the police station. The interviews were recorded. During an initial interview, Detective Conboy testified defendant made the following statements: "Basically he told me first . . . denied having a gun. . . . . I showed him photos of a video image that depicted a man with a gun -- or depicted a man at the scene, and he identified the photos as his." About one hour later, Detective Conboy interviewed defendant a second time. Prior to the second interview, defendant was confronted with a video image depicting a man. The man had a gun in his waistband. Detective Conboy described defendant's admissions during the second interview as follows: "He admitted to being in the alley. He denied dumping -- or getting rid of a handgun in the alley. He admitted that he was the person in the photos. He admitted that he had a gun. And the gun was in fact in his waistband. He denied the

4

gun we recovered was the gun used in the shooting, and he denied telling me where the handgun he reportedly had was."

## III. DISCUSSION

### A. Count 1: Sufficiency of the Evidence

Defendant challenges the sufficiency of the evidence to support his shooting at an occupied motor vehicle conviction. Defendant argues there was no evidence he aimed the gun *at* the vehicle: "The moment of the shooting was not recorded and not witnessed. There was no bullet hole in a vehicle, and no wounded occupant. There is no way to know if [defendant] shot at the truck, or across its bow or into the air as a warning, and only speculation supplies the missing evidence." Defendant asserts further: "[T]here is no certainty where [defendant] aimed his gun since no one saw him point it and there is no bullet hole to trace the trajectory of the bullet and his intended aim. There is no evidence at all where [defendant] aimed when the camera panned away." This contention is meritless when considered in conjunction with the applicable standard of review.

Shooting at an occupied motor vehicle, a violation of section 246, is a general intent crime. (*People v. Ramirez* (2009) 45 Cal.4th 980, 985, fn. 6 [inhabited dwelling]; *People v. Mendoza* (1998) 18 Cal.4th 1114, 1123 [inhabited dwelling]; *People v. Iraheta* (2014) 227 Cal.App.4th 611, 620 [occupied motor vehicle].) As our Supreme Court has held, "The elements of this offense are (1) acting willfully and maliciously, and (2) shooting at an [occupied vehicle]. [Citation.]" (*People v. Ramirez, supra,* 45 Cal.4th at p. 985; accord, *People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1501.) Our Supreme Court set forth the applicable standard of review in *People v. Jennings* (2010) 50 Cal.4th 616, 638-639: "[W]e must determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. We review the entire record in the light most favorable to the judgment below to determine whether it discloses sufficient

5

evidence—that is, evidence that is reasonable, credible, and of solid value—supporting the decision, and not whether the evidence proves guilt beyond a reasonable doubt. (*People v. Mincey* (1992) 2 Cal.4th 408, 432.) We neither reweigh the evidence nor reevaluate the credibility of witnesses. (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.) We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence. (*Ibid.*) If the circumstances reasonably justify the findings made by the trier of fact, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. (*Ibid.*)" (Accord, *People v. Hajek* (2014) 58 Cal.4th 1144, 1260.)

Substantial evidence supported the jury's verdict. Defendant admitted he had a gun. He concedes for purposes of his argument on appeal that he fired the weapon. On the surveillance video, defendant can be seen walking on Ivar Avenue holding the gun in his right hand. He looks back over his shoulder towards Hollywood Boulevard. The red truck turns the corner from Hollywood Boulevard to Ivar Avenue. Defendant turns toward the truck and raises his arms in the direction of the truck just as it accelerates past him. Mr. Solomko heard a gunshot at that moment. The camera panned away from defendant. When defendant came back into the camera's view, he was putting the gun back in his pocket or waistband. This was substantial evidence from which the jury could reasonably conclude defendant fired his gun *at* the red truck.

### B.  Count 2: Necessarily Included Offense

Discharging a firearm in a grossly negligent manner (§ 246.3, subd. (a)) is a necessarily included lesser offense of shooting at an occupied vehicle (§ 246). (*People v. Ramirez, supra,* 45 Cal.4th at pp. 985-990; *People v. Overman* (2005) 126 Cal.App.4th 1344, 1360-1362 [occupied building]; 1 Witkin & Epstein, Cal. Criminal Law (4th ed. 2012) Crimes Against the Person, § 49, p. 843-844.) Therefore, defendant's count 2 conviction must be reversed. (*People v. Pearson* (1986) 42 Cal.3d 351, 355; *People v. Dowdell* (2014) 227 Cal.App.4th 1388, 1416.) Because we reverse defendant's count 2

conviction, we must reduce his court facilities (Gov. Code, § 70373, subd. (a)(1)) and operations assessments (§ 1465.8, subd. (a)(1)) to $60 and $80 respectively. (*People v. Rios* (2013) 222 Cal.App.4th 542, 576; see *People v. Sencion* (2012) 211 Cal.App.4th 480, 484-485 [court operations and facilities assessments apply to each count of which a defendant is convicted]; *People v. Castillo* (2010) 182 Cal.App.4th 1410, 1415, fn. 3 [same].)

## C.  Count 3:  Sentencing

As noted, defendant admitted he had sustained a prior violent or serious felony conviction within the meaning of sections 667, subdivisions (b) through (i), and 1170.12. The trial court imposed a concurrent two-year sentence on count 3. Under sections 667, subdivision (e)(1), and 1170.12, subdivision (c)(1), the trial court was required to double the two-year term. (*People v. Sok* (2010) 181 Cal.App.4th 88, 93, 95, fn. 6; *People v. Matthews* (1999) 70 Cal.App.4th 164, 169, fn. 4; *People v. Dominguez* (1995) 38 Cal.App.4th 410, 424.) But the trial court could impose a two-year term if it struck the prior felony conviction. (*People v. Garcia* (1999) 20 Cal.4th 490, 492-493, 496-504; see *In re Coley* (2012) 55 Cal.4th 524, 559-560; 3 Witkin & Epstein, Cal. Criminal Law, *supra,* Punishment, § 441, p. 696.)

The record is unclear as to whether the trial court intended to strike the prior serious or violent felony conviction enhancement which required the count 2 sentence to be doubled. On one hand, the trial court never stated it intended to do so nor were the mandatory section 1385, subdivision (a) findings set forth in the minutes. (*People v. Bonnetta* (2009) 46 Cal.4th 143, 145-146, 153; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 504.) On the other hand, the imposition of only a two-year sentence is consistent with the intent to exercise section 1385, subdivision (a) discretion. Thus, the appropriate course of action is to reverse the sentence as to count 2 and allow the trial court to either double the two-year sentence or strike the prior violent or serious felony convention enhancement. (*People v. Bonnetta¸ supra*, 46 Cal.4th at pp. 145-146,

7

153; see 5 Witkin & Epstein, *supra,* Criminal Trial, § 473, p. 736.) Upon remittitur issuance, the trial court is to exercise its discretion in determining whether to strike the prior violent or serious felony conviction enhancement. If the trial court decides not to do so, then the concurrent count 2 sentence must be doubled to four years. Of course, our discussion only relates to enhanced sentencing pursuant to section 667, subdivisions (b) through (i) and 1170.12.

### D. Conduct Credit

Defendant was awarded 504 days in presentence custody. But his conduct credit was limited to 15 percent of his custody credit under section 2933.1, subdivision (a). Section 2933.1, subdivision (a), applies to a defendant who is convicted of a violent felony listed in section 667.5, subdivision (c). None of defendant's crimes are violent felonies. Section 2933.1, subdivision (a), applies to a felony in which a defendant uses a firearm, but only when such use has been charged and proved as provided in sections 12022.3, subdivision (a), 12022.5 or 12022.55. (§ 667.5, subd. (c)(8).) There was no such pleading and proof in the present case. Therefore, defendant was entitled to 504 days of conduct credit. (§ 4019; see *People v. Brown* (2012) 54 Cal.4th 314, 322; *People v. Rayanayagam* (2012) 211 Cal.App.4th 42, 52; *People v. Verba* (2012) 210 Cal.App.4th 991, 993.) The judgment must be modified to so provide.

## IV. DISPOSITION

Defendant's conviction of discharging a firearm in a grossly negligent manner, count 2, is reversed. Defendant's count 3 sentence is reversed. Upon remittitur issuance, the trial court is to resentence defendant on count 3. The judgment is modified to: impose $60 in court facilities assessments (Gov. Code, § 70373, subd. (a)(1)) and $80 in court operations assessments (Pen. Code, § 1465.8, subd. (a)(1)); and award defendant 504 days of conduct credit. The judgment is affirmed in all other respects. Upon remittitur issuance, and following resentencing on count 3, the superior court clerk must amend the abstract of judgment and deliver a copy to the Department of Corrections and Rehabilitation.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


TURNER, P.J.

We concur:


KRIEGLER, J.


GOODMAN, J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.