Filed 6/26/15  P. v. Velasco CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ARNULFO VELASCO,<br><br>    Defendant and Appellant. | B257668<br><br>(Los Angeles County<br>Super. Ct. No. TA128189) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ricardo R. Ocampo, Judge.  Affirmed.

Kim Malcheski, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Victoria B. Wilson and Carl N. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \*

We affirm defendant Arnulfo Velasco's conviction for murder. He confessed to killing the victim, whom he shot as the victim was attempting to open a door or a gate. Although there was evidence an unidentified person told defendant that the victim wanted to kill him, there was no evidence defendant was in fear of imminent harm at the time he shot the victim. We reject defendant's challenges to the trial court's jury instructions, all of which are based on claims that there was evidence defendant acted in self-defense, unreasonable self-defense or was provoked. No such evidence existed, and we therefore find no error in the instructions.

## FACTS AND PROCEDURE

Velasco, a gang member, admitted to shooting rival gang member Juan Avila. Avila died of a gunshot wound to his chest.

Immediately before the shooting, Velasco was a passenger in Jonathan Hernandez's[1] car and saw Avila standing across the street. Defendant testified Hernandez made a U-turn; defendant exited the car; defendant said "fuck you" and shot Avila. According to defendant, just prior to shooting, Avila was holding a bag and "was trying to open up a door to the carwash."

After the shooting, defendant told his cousin that he killed Avila. On February 28, 2013, defendant received a text message indicating "[y]ou hit that foo [*sic*] four times mahboy [*sic*] and he died when he got to the hospital." The phone did not show who wrote the text message. Defendant threw away the gun he used to kill Avila because he did not want it traced back to him.

Jesse Hibbler observed the shooting. He saw defendant exit a car after the car made a U-turn. Defendant had a gun in his hand when he exited the car, and defendant shot Avila approximately five times. According to Hibbler, after the shooting defendant "gave [the] driver [(Hernandez)] . . . a high-five." (At trial, defendant denied giving Hernandez a "high five.")

---

[1]     Hernandez was a codefendant. After the jury was unable to reach a verdict as to him, the court declared a mistrial.

2

In a pretrial interview played for jurors, defendant initially denied having any "beef" with Avila and denied shooting Avila, but later claimed someone or some people told him that Avila was going to kill him. Defendant testified Avila told him "[d]on't let me catch you slippin' [*sic*]," which defendant understood to mean Avila was going to kill him. Defendant did not contact the police because he did not want to be labeled a "snitch," which according to him would have compromised his personal safety.

In the pretrial interview, defendant acknowledged that when he spotted Avila near the carwash, he "just shot him." According to defendant, ". . . I guess I just put my life against his, man." At trial defendant further explained that someone (but he did not know who) told him Avila was "gonna kill" him. Defendant testified he was afraid of Avila because "a lot of people" told him Avila planned to kill him. But, defendant testified that he saw Avila on other occasions and was able to walk past him without Avila hurting him.

After the conclusion of the evidence, defense counsel sought an instruction on voluntary manslaughter. The court found no evidence the killing occurred in the heat of passion or during a sudden quarrel. The court also concluded no evidence warranted an instruction on imperfect self-defense. The trial court denied defense counsel's request to give a special instruction on how to understand a prior threat in the context of evaluating self-defense. The court instructed jurors on first and second degree murder.

Jurors convicted defendant of first degree murder. Jurors found defendant personally used a handgun within the meaning of Penal Code section 12022.53, subdivisions (b), (c), and (d). Jurors also found a gang enhancement true. (Jurors acquitted defendant of other charges not relevant to the current appeal.) The court sentenced defendant to a total prison term of 50 years to life.

## DISCUSSION

As we shall explain, defendant's arguments that the court erred in refusing to instruct jurors with the three instructions offered by the defense lack merit.

" ' "[A] defendant has a constitutional right to have the jury determine every material issue presented by the evidence . . . ." [Citations.]' [Citation.] 'To protect this

3

right and the broader interest of safeguarding the jury's function of ascertaining the truth, a trial court must instruct on lesser included offenses, even in the absence of a request, whenever there is substantial evidence raising a question as to whether all of the elements of the charged offense are present.' [Citation.] Conversely, even on request, a trial judge has no duty to instruct on any lesser offense *unless* there is substantial evidence to support such instruction. [Citation.] ' "Substantial evidence is evidence sufficient to 'deserve consideration by the jury,' that is, evidence that a reasonable jury could find persuasive." ' " (*People v. Cunningham* (2001) 25 Cal.4th 926, 1007-1008.)

### 1. Unreasonable Self-defense Instruction

Defendant argues the evidence someone told him that Avila wanted to kill him supported an instruction on unreasonable self-defense. We disagree.

Imperfect self-defense " 'is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury. [Citation.] Such a killing is deemed to be without malice and thus cannot be murder.' " (*People v. Iraheta* (2014) 227 Cal.App.4th 611, 620.) Imperfect self-defense reduces murder to voluntary manslaughter, a lesser included offense. (*Ibid.*) "[F]or either perfect or imperfect self-defense, the fear must be of imminent harm. 'Fear of future harm—no matter how great the fear and no matter how great the likelihood of the harm—will not suffice. The defendant's fear must be of *imminent* danger to life or great bodily injury.' " (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082; see also *People v. Rodarte* (2014) 223 Cal.App.4th 1158, 1168.)

Here, no evidence supported the inference that defendant was in fear of imminent harm. According to defendant's own testimony, he was a passenger in a vehicle where he was safe from Avila when he first saw Avila. Defendant exited the car to shoot him. Further, just before defendant shot Avila, Avila was standing with a bag trying to open a gate to a carwash. Avila did not threaten defendant or even know that he was nearby. No evidence supported the inference defendant was in fear of imminent danger.

This case is distinguishable from those cited by defendant. In *People v. Anderson* (2006) 141 Cal.App.4th 430, the evidence showed the victim acted aggressively just

4

before the killing. (*Id*. at p. 447.) Specifically the victim "was 'going ballistic'" and cut the defendant's face with a crack pipe. (*Id*. at pp. 437, 447.) The appellate court concluded that the trial court had a sua sponte duty to instruct on lesser included offenses of murder. (*Id*. at p. 435.) In contrast here, there was no evidence that Avila injured defendant (or even tried to injure defendant) supporting an inference that defendant was in fear of imminent danger.

*People v. Thomas* (2013) 218 Cal.App.4th 630 is similarly unhelpful to defendant. In that case, there was a physical altercation just before the victim was killed. (*Id*. at p. 645.) There was evidence the defendant was dragged across a parking lot before retrieving the gun and shooting the victim. (*Ibid*.) There also was evidence that immediately before the shooting the victim lunged at the defendant. (*Ibid*.) No similar evidence of an altercation prior to the shooting existed in this case.

## 2. *Pinpoint Instruction on Provocation to Reduce First Degree Murder to Second Degree Murder*

Defendant next argues the court prejudicially erred in refusing to instruct jurors that provocation may reduce first degree murder to second degree murder. Defendant argues that the court should have instructed jurors as follows:

"Provocation may reduce a murder from first degree to second degree [and may reduce a murder to manslaughter]. The weight and significance of the provocation, if any, are for you to decide.

"If you conclude that the defendant committed murder but was provoked, consider the provocation in deciding whether the crime was first or second degree murder. [Also, consider the provocation in deciding whether the defendant committed murder or manslaughter.]" (CALCRIM No. 522.)

Defendant argues that his testimony and statement to police "provided a more than sufficient basis for that instruction." We disagree.

To support the requested instruction, "the evidence of provocation would justify a jury determination that the accused had formed the intent to kill as a *direct* response to the provocation and had acted immediately . . . ." (*People v. Wickersham* (1982) 32

5

Cal.3d 307, 329, italics added, disapproved on another ground in *People v. Barton* (1995) 12 Cal.4th 186, 200-201.) Defendant's testimony failed to provide any temporal link between Avila's threats to kill him and the shooting. A reasonable juror could not conclude defendant acted immediately in direct response to provocation.

To the contrary, defendant's own testimony shows that he was not provoked before shooting Avila. According to defendant, Avila was holding a bag and entering a gate to a carwash immediately before defendant shot him. There was no evidence that Avila knew defendant was present until defendant yelled at him, and there was no evidence Avila engaged in any provocative conduct. Although there was evidence that an unidentified person warned defendant Avila wanted to kill him, defendant did not act immediately in response to learning that information. (See *People v. Fenenbock* (1996) 46 Cal.App.4th 1688, 1705.) Defendant provides no theory of provocation consistent with the evidence at trial supporting only second degree murder.

### 3. Special Instruction

Defense counsel requested the court give the following special instruction:

"One whose life or person has been threatened by a group that has a reputation for violence, and which reputation is known by the Defendant, is justified in acting more quickly and *taking harsher measures for his own protection in the event of an assault either actual or threatened, than would a person who had not experienced such threats.*

"If in this case you believe from the evidence that members of a group with a reputation for violence threatened the life or person of the defendant and that the defendant, because of such threats, had reasonable cause to fear greater peril in the event of a confrontation with members of that group than he would have otherwise, you are to take such facts and circumstances into consideration *in determining whether Defendant acted in a manner in which a reasonable person would act in protecting his own life or bodily safety.*

"A person whose life or safety has been previously threatened, or has been assaulted by members of a group that has a reputation for violence is justified in acting more quickly and taking harsher *measures for self-protection from an assault by members*

*of that group* than would a person who had not received threats from or been previously assaulted by members of the same group." (Italics added.) The court rejected the instruction.

As defendant argues, evidence of threats to defendant's life would be relevant to a claim of self-defense. (*People v. Minifie* (1996) 13 Cal.4th 1055, 1069.) However, here the proposed instruction was not warranted because it was based on the incorrect assumption that there was evidence defendant was acting in self-defense. No evidence supported the italicized language that defendant acted in self-defense or took action to protect himself from Avila. Nor was there evidence of a confrontation between defendant and Avila prior to the shooting. Because no evidence supported the instruction, the trial court properly refused to give it.[2]

## DISPOSITION

The judgment is affirmed.

FLIER, J.

WE CONCUR:

RUBIN, Acting P. J.

GRIMES, J.

---

[2] Because we find no instructional error, we need not consider defendant's argument that the errors prejudiced him. Nor are we required to resolve the parties' dispute regarding the appropriate standard for prejudice.