Filed 6/30/25  P. v. Montano CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RICARDO MONTANO,<br><br>        Defendant and Appellant. | A169526<br><br>(Alameda County<br>Super. Ct. No. 168257B) |

Defendant Ricardo Montano appeals the denial of his petition for resentencing of his attempted murder conviction under Penal Code[1] section 1172.6.  He argues there was insufficient evidence supporting the trial court's finding that he acted with intent to kill when he repeatedly shot at the victim.  We find no error and affirm.

BACKGROUND

On February 15, 2012, an information charged defendant with attempted murder and a variety of other charges and enhancing allegations.  Defendant pleaded guilty to one count of attempted murder and admitted the

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

1

enhancements for personal use of a firearm and infliction of great bodily injury. He was sentenced to a total of 22 years in prison.

On May 24, 2022, defendant filed a petition for resentencing. The court appointed counsel and ordered briefing. The prosecution conceded defendant made a prima facie case, requiring an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). At the evidentiary hearing, the court relied on the preliminary hearing testimony of Oakland Police Officer Makisig Sevilla, who witnessed the shooting.

Officer Sevilla testified that on October 14, 2010, he was driving eastbound towards 71st Street in Oakland, in an unmarked car and in civilian clothes, when he noticed a Toyota Camry stopped in the middle of the street. Two individuals were in the car, one in the driver's seat and the other in the front passenger seat; the person in the passenger seat was later identified as defendant. Defendant was speaking to a pedestrian on the sidewalk, the victim.

Although he could not hear the conversation, Officer Sevilla noticed defendant was getting agitated. After less than a minute, the victim turned around and ran the opposite direction down 71st Street and turned right on Hamilton. Defendant exited the Camry, pointing his handgun at the victim as he chased him down. The Camry followed defendant and the victim, and Officer Sevilla followed the Camry. Officer Sevilla briefly lost sight of defendant and the victim when they turned the corner, and he heard several gunshots within seconds of losing sight of them.

When Officer Sevilla turned the corner, he saw the victim on the ground and defendant standing over him at the victim's waist, about half a foot away. He also saw the driver, who was carrying a handgun, exit the Camry and stand next to defendant. The two fired several shots at the victim

2

on the ground while Officer Sevilla observed from about 20 to 25 yards away. The victim, who was unarmed, laid in a fetal position and used his hands to protect himself. The shooting was very quick. Officer Sevilla was not sure what part of the victim's body the individuals were aiming for, but he could tell it was not towards the head. The victim's whole body was constantly moving to evade the shots. Sevilla testified that most of the shots appeared to hit the victim's "lower, maybe, stomach, lower extremity area."

After the shooting, the driver and defendant fled in their car. Officer Sevilla tried to follow the Camry, but stopped after defendant leaned out the window and pointed a handgun at him. Shortly afterwards, other officers arrested defendant and the driver and recovered two guns from their car. The victim suffered multiple gunshot wounds, including to the left leg, left knee, right calf, right lower leg, and right wrist. Officers recovered 16 casings at the scene of the shooting; eight were .40 caliber while the other eight were .9 millimeter caliber.

The court denied defendant's petition, finding that he acted with intent to kill and was thus ineligible for relief. The court stated that it was "pure happenstance" that there was "an eyewitness who happened to be a law enforcement officer," and noted that the officer's testimony "was materially unimpeached." The court inferred that the victim felt threatened when he ran away from defendant, and further found that defendant followed and pointed something at the victim, indicating that defendant intended to harm the victim. Seconds later, the officer heard gunshots and the officer followed the Camry to the scene where he saw both the driver and defendant shooting at the victim while he was in a fetal position, blocking the shots with his hands.

Relying on and partially quoting from *People v. Smith* (2005), 37 Cal.4th 733, 741, the court explained: "The act of firing toward a victim at a close, but in this case, I would say point-blank range in a manner that could have inflicted a moral [*sic*] wound had the bullet been on target is sufficient to support an inference of intent to kill." Continuing to paraphrase and quote from *Smith,* the court further stated: "The fact that the shooter may have fired only once — that's not this case. There were multiple shots — and then abandoned his efforts . . . out of fear, out of necessity or fear does not comply [*sic*] the conclusion that he lacked the animus to kill in the first instance. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily established a less culpable state of mind." Notwithstanding that "the victim was on the ground or the defendant missed," the court found it "unreasonable" to infer that defendant was merely trying to scare or maim the victim. Under *Smith* and its progeny, the court found that the prosecution had established intent to kill beyond a reasonable doubt.

Defendant timely appealed.

## DISCUSSION

### I. Standard of Review

A denial of a section 1172.6 petition is reviewed for substantial evidence. (*People v. Reyes* (2023) 14 Cal.5th 981, 988.) The record must be reviewed "in the light most favorable to the judgment below to determine whether it discloses substantial evidence — that is, evidence which is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*Ibid.*) We further presume all reasonable inferences in support of the judgment. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) If the circumstances reasonably

4

justify the findings of the trier of fact, we will not reverse a judgment simply because the circumstances might also support a contrary finding. (*Ibid.*) As a reviewing court, we neither reweigh the evidence nor do we reevaluate the witnesses' credibility. (*Ibid.*) "The ultimate determination is whether a reasonable trier of fact could have found for the respondent based on the whole record." (*Kuhn v. Department of General Services* (1994) 22 Cal.App.4th 1627, 1633, italics omitted.)

## II. Applicable Legal Principles

### A. Attempted Murder

Attempted murder requires "the specific intent to kill and the commission of a direct but ineffectual act towards accomplishing the intended killing." (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890; *Smith*, *supra*, 37 Cal.4th at p. 739.) Intent to kill requires proof that the assailant desires the victim's death or knows, to a substantial certainty, that the victim will die because of the assailant's actions. (*Smith*, at p. 739.)

As there is rarely direct evidence of a defendant's intent, intent may be derived from the circumstances of the crime, including the defendant's actions. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945-946 (*Lashley*).) "The act of firing toward a victim at a close, but not point blank, range 'in a manner that could have inflicted a mortal wound had the bullet been on target is sufficient to support an inference of intent to kill. . . .' [Citation.]" (*People v. Chinchilla* (1997) 52 Cal.App.4th 683, 690, quoting *Lashley*, at p. 945.) "The fact that the shooter may have fired only once then abandoned their efforts out of necessity or fear does not compel the conclusion they lacked the animus to kill in the first place. Nor does the fact that the victim may have escaped death because of the shooter's poor marksmanship necessarily establish a less culpable state of mind." (*Ibid.*)

5

### B. Senate Bill No. 1437

Senate Bill No. 1437 (Stats. 2018, ch. 1015, §§ 1–2) amended sections 188 and 189, which defined malice and the degrees of murder respectively. (*People v. Estrada* (2024) 101 Cal.App.5th 328, 335.)  Section 188 now states, "Except as stated in subdivision (e) of Section 189, in order to be convicted of a murder, a principal in a crime shall act with malice aforethought.  Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Ibid.*)  The Legislature also amended section 189 "to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Lewis* (2021) 11 Cal.5th 952, 959.)  Relief is unavailable to defendants who participated in the crime with the intent to kill.  (§189, subd. (e).)

Defendants who were convicted of murder, attempted murder, or manslaughter or accepted a plea offer in lieu of a trial may petition for resentencing if they could not currently be convicted of the crime due to the changes made to sections 188 or 189.  (§ 1172.6, subd. (a).)  Once the court determines that the petition establishes a prima facie case for relief, the court will hold a hearing to determine whether to vacate the conviction and resentence the defendant.  (§1172.6, subd. (d)(1).)  At this hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law, as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§1172.6, subd. (d)(3).)  The court can consider evidence previously admitted at any prior hearing or trial that is admissible under the current law, including witness testimony.  (§ 1172.6, subd. (d)(3).)

### III. The Court Correctly Denied the 1172.6 Petition

On appeal, defendant argues there is insufficient evidence that he fired with an intent to kill, contending that the record supports only an inference that he was aiming to injure the victim's legs. He further asserts that *Smith* is not applicable, as he fired from a point blank range, rather than the "close, but not point blank, range" discussed in that case. (*Smith*, *supra*, 37 Cal.4th at p. 740.) Defendant theorizes that since he shot the victim eight times at point blank range and hit only the victim's legs (aside from a hand shot attributable to the victim's defensive motion), the record supports only an inference that he shot with the intent to injure, rather than to kill. We disagree that an intent to injure is the only reasonable inference supported by the record.

Defendant highlights Officer Sevilla's testimony that he saw defendant "point [his gun] towards the lower half, meaning from the waist downwards of the victim," and that both men fired "in the direction of the lower extremity." However, as respondent notes, Officer Sevilla also testified that the gunshots targeted the victim in the "lower, maybe stomach, lower extremity area" and that the victim's "whole body was moving" in response to the gunshots, likely to defend himself or dodge the bullets. A shot to the stomach can plainly be a fatal wound, and, given that defendant and the driver fired sixteen shots at the victim who was lying defenseless on the ground, the court did not err in concluding it was "a miracle" that the victim was not killed. Accordingly, we reject defendant's argument that Officer Sevilla's testimony supports only an intent to injure.

In addition to focusing on Officer Sevilla's testimony, defendant asserts that the victim's injuries — which were mostly leg wounds — demonstrate only an intent to injure. This argument implicitly rests on an assumption

that he aimed at the victim with military precision. As noted above, however, the shooting was a quick and chaotic event, and the victim was constantly moving — facts that would make it unlikely for a shooter to be able to hit a precisely intended target. And indeed, the record reflects that sixteen shots were fired but only five hit their mark. On these facts, we have little trouble concluding the trial court could reasonably infer that defendant intended to kill, but because of the short duration of the shooting and the victim's movement, the victim narrowly avoided a fatal wound.

Defendant also argues *Smith* is irrelevant as the court there expressly stated intent to kill can be derived from "firing towards a victim at a close, but not point blank, range," making it inapplicable in point blank situations such as this one. (*Smith, supra*, 37 Cal.4th at p. 742.) We are unconvinced by this argument, which implicitly assumes that shooting from a point blank range makes it impossible to miss the intended target. As noted, however, the victim's constant movements made it less likely that defendant could precisely hit his target, even at point blank range. Moreover, given that eleven out of the sixteen shots missed the victim, the trial court could reasonably infer that the victim would have suffered a fatal wound had defendant aimed better in this chaotic situation. The court in *People v. Cardenas* (2020) 53 Cal.App.5th 102, 120–121 rejected the same argument as defendant advances here: "That the bullets struck [the victims] in their feet and ankles similarly does not show that there was insufficient evidence of specific intent to kill them. One reasonable inference that could be drawn from that evidence, as Cardenas does, is that Cardenas shot both men with the intent to injure or to frighten and not the intent to kill. However, another reasonable inference that could be drawn from that evidence is that Cardenas intended to shoot to kill both [victims] but had poor aim." As defendant

8

concedes, *Smith* covers situations involving "hypothetical missed targets and poor [marksmanship]." *Smith* is thus applicable, for if defendant had better aim, he could have inflicted a fatal wound.

Contrary to defendant's contention, there is substantial circumstantial evidence supporting his intent to kill. Officer Sevilla testified that defendant was agitated when speaking to the victim before the shooting. (*Lashley*, *supra*, 1 Cal.App.4th at p. 945 [defendant's conduct and behavior prior to the shooting can constitute substantial evidence of intent to kill].) Officer Sevilla also said he saw the unarmed victim running the opposite direction while defendant pursued him with a firearm. (*People v. Richmond* (1991) 2 Cal.App.4th 610, 618 [attacking a fleeing victim is indicative of an intent to kill].) *Smith* explains that a "shooter's purposeful 'use of a lethal weapon with lethal force' against the victim, if otherwise legally unexcused, will itself give rise to the inference of the intent to kill." (*Smith*, *supra*, 37 Cal.4th at p. 742.) As there was certainly no legal excuse for defendant's attack on a fleeing and unarmed victim, these facts constitute more than sufficient evidence to support an intent to kill.

## DISPOSITION

The judgment is affirmed.

BROWN, P. J.

WE CONCUR:

STREETER, J.
GOLDMAN, J.

*People v. Montano* (A169526)

9